**Loran W. ROBBINS, et al.,**
**Plaintiffs-Appellees,**
**Cross-Appellants,**

v.

**McNICHOLAS TRANSPORTATION**
**COMPANY, Defendant-Appellant,**
**Cross-Appellee.**

Nos. 85–2184, 85–2330.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1986.

Decided April 21, 1987.

Terence G. Craig, Central States Law Dept., Chicago, Ill., for plaintiff-appellee, cross-appellant.

Robert H. Cowan, Gracey, Maddin, Cowan & Bird, Nashville, Tenn., for defendant-appellant, cross-appellee.

Before WOOD and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Trustees of the Central States, Southeast and Southwest Areas Pension Fund (Trustees) filed a complaint on August 8, 1984 against McNicholas Transportation Company (McNicholas) seeking an order compelling McNicholas to make withdrawal liability payments pursuant to the Multiemployer Pension Plan Amendment Act of 1980

1. The history of ERISA and the MPPAA has been set forth in *Robbins v. Pepsi-Cola Metropol-*

(MPPAA),[1] 29 U.S.C. § 1381 *et seq.* McNicholas, an Ohio corporation, is a motor carrier, and was a contributor to the Central States Fund.

On May 31 and June 6, 1985, the district court ordered McNicholas "to pay 55.73 monthly interim installments of $71,221.83 to the Trustees beginning July 1, 1985." McNicholas appealed from the order compelling payments and the Trustees appealed from the denial of its request that McNicholas be compelled immediately to pay past due installments, with interest. On June 6, 1986, after oral argument, this court stayed the June 6, 1985 order during the pendency of this appeal.

The Trustees' side of the matter is as follows: McNicholas stopped making contributions to the Fund in September 1982. The Trustees determined in late 1982 that McNicholas had permanently ceased its obligation to make contributions and thus had completely withdrawn. 29 U.S.C. § 1383. The Trustees determined McNicholas' withdrawal liability, 29 U.S.C. § 1382, at $3,287,614.68 in total, or $71,270.83 in monthly installments, beginning March 1, 1984. On December 22, 1983, they gave notice pursuant to 29 U.S.C. § 1399(b)(1). Although McNicholas disputes the claim that it has withdrawn, and that it is liable, and has sought arbitration under 29 U.S.C. § 1401(a), § 1401(d) requires McNicholas to make the monthly payments while the arbitration remains pending, and the Trustees are entitled to bring this action to compel the payments. 29 U.S.C. § 1451.

McNicholas' side is as follows: McNicholas' operations in the Pittsburgh area were shut down by a strike September 7, 1982, and its entire operation was shut down as a result on September 28, 1982. (Apparently the workers who struck were not beneficiaries of the Fund, although other McNicholas employees are.) The Company desires to reopen its operations, but cannot do so until it reaches agreement with the striking union. Negotiations have continued, but have not been successful. The Trustees' determination that McNicholas

*itan Bottling Co.,* 636 F.Supp. 641, 645–48 (N.D. Ill.1986).

had withdrawn was erroneous because 29 U.S.C. § 1398 provides

Notwithstanding any other provision of this part, an employer shall not be considered to have withdrawn from a plan solely because—

\*　　\*　　\*　　\*　　\*　　\*

(2) an employer suspends contributions under the plan during a labor dispute involving its employees....

McNicholas timely sought review by the Trustees (29 U.S.C. § 1399(b)(2)(A)) and then initiated arbitration under § 1401(a).

The Trustees brought this action for an order compelling McNicholas to make its 56 withdrawal liability monthly payments.

29 U.S.C. § 1451(a)(1) authorizes fiduciaries, employers, and others adversely affected to bring an action for legal or equitable relief, and § 1451(c) confers jurisdiction. (*See also* § 1132(a) and (e).) 29 U.S.C. § 1401(a)(1) provides that "Any dispute between an employer and the plan sponsor of a multi-employer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."

Notwithstanding the mandatory language prescribing arbitration for a dispute like the present one, employers, faced with a demand for interim payments to which they claim a defense, have brought actions, or interposed counterclaims in actions brought to compel payments, seeking to enjoin fiduciaries from asserting or collecting withdrawal liability.

Many courts have viewed the arbitration provision as an administrative remedy and have acknowledged the rule that the administrative remedy must be exhausted before judicial relief can be sought. They usually have cited *Myers v. Bethlehem Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Courts have often found, however, an exception permitting them to resolve some or all the issues on the merits. *Republic Industries v. Central Pa. Teamsters, Etc.*, 534 F.Supp. 1340 (E.D.Pa.1982), reversed,

693 F.2d 290 (3rd Cir.1982) (exhaustion excused in order to decide facial constitutional challenge, p. 296); *T.I.M.E.–D.C., Inc. v. Truck Emp. of N.J. Wel. Fund*, 560 F.Supp. 294 (E.D.N.Y.1983) (exhaustion excused in order to decide statutory interpretation, p. 303); *T.I.M.E.–D.C. v. N.Y. St. Teamsters Conf. Pen. & Ret.*, 580 F.Supp. 621 (N.D.N.Y.1984), *aff'd* 735 F.2d 60 (2d Cir.1984) (exhaustion excused in order to decide statutory interpretation and because employer established irreparable injury, p. 633); *T.I.M.E.–D.C. v. Management-Labor W & P Funds, Etc.*, 756 F.2d 939 (2d Cir.1985) (exhaustion excused in order to decide statutory interpretation, p. 945); *I.A.M. Nat. Pen. Fund v. Schulze Tool & Die*, 564 F.Supp. 1285 (N.D.Cal.1983) (exhaustion excused in order to decide statutory interpretation, p. 1294); *Central States, etc., Pension Fund v. T.I.M.E.–D.C.*, 639 F.Supp. 1468 (N.D.Tex.1986), *appeal pending*, (exhaustion excused in order to avoid irreparable injury, p. 1478); *I.A.M. Nat. Pension Fund Ben. v. Stockton Tri. Ind.*, 727 F.2d 1204 (D.C.Cir.1984) (exhaustion excused because issue was statutory interpretation and exhaustion would not produce judicial economy, p. 1210); *Robbins v. Pepsi Cola Metropolitan Bottling Co.*, 636 F.Supp. 641 (N.D.Ill.1986) (exhaustion implicitly excused as to constitutional and statutory issues, but not as to fact issues, p. 679 n. 53, p. 683); *stay pending appeal denied*, 800 F.2d 641 (7th Cir.1986).

Although McNicholas in part of its brief does challenge the constitutionality of the MPPAA, this court has upheld the statute in general. *Peick v. Pension Ben. Guar. Corp.*, 724 F.2d 1247, 1276 (7th Cir.1983).[2]

In the case before us, McNicholas promptly resorted to the arbitration remedy, and the ultimate decision on the merits will be produced through that process. Thus we have not been concerned with the rule requiring exhaustion or its exceptions. 29 U.S.C. § 1401(d) imposes a duty to make the scheduled payments in the interim. The Trustees sought the aid of the court to enforce that duty, and they seem to con-

---

**2.** This court has not addressed the validity of certain presumptions mandated in the arbitration process. Other circuits have differed on that point. *See Robbins,* 636 F.Supp. at 671–77, and cases therein cited. McNicholas does not raise that challenge.

tend that the court has no discretion as to enforcement.

■ Although the order appealed from specifies that McNicholas must make all 56 payments, it also refers to the payments as "interim installments," and must, we think, be subject to the arbitrator's ultimate decision as to the liability for and amount of the payments. If the arbitrator determines that there is no liability, or liability for a smaller amount, the order appealed from would have to be modified. If the arbitrator sustains the Trustees' determination of liability, a final order compelling the remaining payments (no longer "interim") will be appropriate. Because the court's June 6 order is subject to these contingencies, we consider it interlocutory and not final. We have jurisdiction of an appeal from an interlocutory order if it grants or refuses an injunction. 28 U.S.C. § 1292(a)(1).

■ On its face the order appears to grant an injunction compelling payments on and after July 1, 1985, and refuses an injunction as to payments scheduled before that date. This court has noted the question whether an order compelling payment of interim liability is an injunction appealable under §§ 1292(a)(1). *Robbins,* 800 F.2d at 642, n. 2. It had been held that an order compelling a past due payment "is appealable only if it 'might have a "serious, perhaps irreparable, consequence," and [if] the order can be "effectually challenged" only by immediate appeal.'" *I.A.M. Nat. Pension Fund v. Cooper Industries, Inc.,* 789 F.2d 21, 24 (D.C.Cir.1986). *See also Korea Shipping Corporation v. New York Shipping Association,* 811 F.2d 124, 126 (2nd Cir.1987). We conclude, however, that we have jurisdiction of both appeals, McNicholas' as well as the Trustees'. As will be seen, we are of the opinion that a district court has a measure of discretion whether or not to use injunctive power to compel interim payments in these situations. Because the decision to compel payments beginning July 1, 1985, as well as to refuse to compel immediate payment of installments previously due, had a "serious, perhaps irreparable, consequence," subject to effec-

tual challenge only by immediate appeal, the order at least has consequences similar to an injunction and is appealable, by each party, respectively, as an interlocutory grant, in part, and refusal, in part, of an injunction. *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981); *Donovan v. Robbins,* 752 F.2d 1170, 1174 (7th Cir.1985).

We recognize the Congressional purpose behind a collection procedure which has been characterized as "pay now, dispute later." *Robbins,* 636 F.Supp. at 677 and 680, 800 F.2d at 642. We also recognize that compelled payment of money, recoverable with interest upon later determination of error, is not, in itself, irreparable harm. *I.A.M. Nat. Pension Fund,* 789 F.2d at 25, *Terson Co., Inc. v. Pension Benefit Guar. Corp.,* 565 F.Supp. 203, 207 (N.D.Ill.1982).

Here, McNicholas has asserted that compelling the payments would work a severe financial hardship and essentially preclude its resumption of operations. Its current annual income (non-operating) is less than $100,000, and if forced to liquidate its assets to make the $71,000 monthly payments, it would have no hope of resuming operations.

■ Depending on the facts of the particular case, there can be unfairness and injury not likely intended by Congress in compelling interim payments while arbitration of the liability is pending. Congress has provided that interim payments are to be made. It has not expressly required courts to use injunctive powers to compel the payments in every case. We conclude that where the trustees bring an action to compel payment, pending arbitration, the court should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business.

Upon considering the employer's probability of success before the arbitrator, and the gravity of any economic hardship caused by payment of installments while awaiting decision, the court should have discretion, similar. to that exercised in deciding whether to issue a preliminary in-

junction, to decline to use its injunctive power to compel payment. Although the statute itself creates a duty to make the payments, and permits resort to the powers of a court, it does not expressly provide that the court must grant an order compelling payment in every instance. Recognition of this degree of discretion alleviates concern that there be unnecessarily harsh and unintended results.

Counsel has supplied us with copies of an *amicus* brief filed in the Fifth Circuit by the Pension Benefit Guaranty Corporation.[3] The views of the Corporation are entitled to deference because of its responsibility for the enforcement of Title IV of ERISA. 29 U.S.C. § 1303(e)(1).

As the Corporation says in its brief:

First, the interim payment requirement is not self-enforcing, and the Central States Fund had not asked the court to compel interim payments. If the Fund had later sought to compel interim payments, T.I.M.E.–D.C. could have argued both irreparable injury and the merits to the court at that time.[4]

The district court did not consider the question of irreparable injury and in rejecting, seemingly on the merits, McNicholas' defense, emphasized the length of time the labor dispute had continued without settlement.

In this case it seems to be conceded that McNicholas shut down its operations and suspended its contributions as a result of a labor dispute. The court found that the labor dispute "has continued unabated from September of 1982 to the present date." He went on to say that the record "indicates a deadlocked position between labor and management with little or no movement on either side for nearly thirty months." Because the statute forbids basing a finding of withdrawal "solely" on suspension of contributions during a labor dispute, the inquiry in this case must be whether something additional has occurred so that the finding of withdrawal has not been based solely on the suspension of contributions during the labor dispute. A complete withdrawal occurs when an employer "permanently ceases all covered operations under the plan." What is McNicholas' intent with respect to reviving operations? Is it to negotiate in good faith and resume operations when reasonably possible, or is it to go out of the business which is subject to the plan, perhaps merely pretending to negotiate in order to obscure the real intent?

We think this is the type of factual inquiry the arbitrator will make, and that the court's estimate of the probability of success before the arbitrator should address the same inquiry. Because of the nature of the question, the court may well have to take testimony rather than rely solely on affidavits.

The Trustees cross-appealed. They had sought an order compelling McNicholas to make up the past due payments which were to have begun March 1, 1984, with interest. In vacating the order appealed from, we leave the Trustees free to pursue this request before the district court. We do observe that at least *prima facie* it seems logical that if the district court decides to compel interim payments, it would also compel immediate payment of past due installments.

The order appealed from is VACATED, and the cause REMANDED for proceedings consistent with this opinion.

---

**3.** *Central States, Southeast and Southwest Areas Pension Fund v. T.I.M.E.–D.C., Inc.,* Defendant-Appellee, No. 86–1628 (5th Cir.).

**4.** Ordinarily, in the absence of a demonstration that making interim payments would inflict irreparable injury on an employer, a court should enforce the interim payments require-

ment without examining the merits of the underlying dispute concerning withdrawal liability. Even when a court denies interim payments based on demonstrated irreparable injury and a preliminary review of the merits, the underlying dispute should still be arbitrated.