**TRUSTEES OF THE CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, et al., Plaintiffs–Appellees, Cross–Appellants,**

v.

**CENTRAL TRANSPORT, INC., GLS Leasco, Inc., and Centra, Inc., Defendants–Appellants, Cross–Appellees.**

**Nos. 90–2819 and 91–1105.**

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1991.

Decided June 11, 1991.

---

Joseph M. Burns, Martin J. Burns, Stephen B. Horwitz, David S. Allen, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiffs-appellees, cross-appellants.

Leonard R. Kofkin, Fagel & Haber, Chicago, Ill., Patrick A. Moran, Michael A. Nedelman, Terri L. North, Simpson & Moran, Birmingham, Mich., Michael D. Leroy, Neal & Associates, Chicago, Ill., Fredric A. Smith, Nedelman, Romzek, Smith & Frank, Southfield, Mich., for defendants-appellants, cross-appellees.

Before BAUER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

More than seven years ago Mason and Dixon Lines, Inc., filed a bankruptcy petition and stopped making payments to the truck drivers pension fund. The Fund filed an untimely, and therefore unavailing, claim in the bankruptcy case. But Central Transport, Inc., GLS Leasco, Inc., and Centra, Inc., firms under common control with Mason & Dixon, were (and are) solvent; the Fund has pursued them as entities liable for Mason & Dixon's pension obligations under 29 U.S.C. § 1301(b)(1). We call them "Centra" for convenience. Centra did not demand arbitration within the 60 days given by 29 U.S.C. § 1401(a)(1). In 1988 the district court held that this omission entitled the Fund to immediate judgment for the full amount of withdrawal liability it demands. We disagreed, holding that the Mason & Dixon bankruptcy gave Centra additional time to pursue arbitration. 888 F.2d 1161 (7th Cir.1989). After Centra made the formal demand, the Fund responded with a claim for interim withdrawal payments pending the arbitrator's decision. See 29 U.S.C. §§ 1399(c)(2), 1401(d), 1451. In July 1990 the district court ordered Centra to pay $706,112 immediately and to pay additional sums in October 1990 and January 1991. 1990 WL 114658, 1990 U.S.Dist. Lexis 9167. Centra appeals from this order. It has so far paid not a dime, and the Fund appeals from the district court's refusal to hold Centra in contempt of court.

I

 When ordering Centra to pay, the district court entered a judgment under

Fed.R.Civ.P. 54(b). This rule allows immediate appeal of separate disputes comprised within a larger litigation. It does not, however, allow appeal when damages have been partially but not completely determined, or when the district court will revisit the issues. *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1237 (7th Cir.1990); *Horn v. Transcon Lines, Inc.*, 898 F.2d 589 (7th Cir.1990). The district judge viewed his order to pay as a preliminary computation of damages, to be made final after the arbitrator's award. If that is the correct way to characterize the order, then Rule 54(b) does not allow the entry of final decision, and we lack jurisdiction of Centra's appeal.

The Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) requires a firm that withdraws from a multiemployer pension trust to cover its share of any unfunded pension obligations. 29 U.S.C. § 1381. If the employer and the fund do not agree on the employer's obligation, they must arbitrate. While the arbitration proceeds, the employer must either pay the whole sum or make periodic payments in an amount determined by the trustees. 29 U.S.C. §§ 1399(c)(2), 1401(d). If the employer does not pay the sums demanded, the trust may file a civil action in federal court to collect. 29 U.S.C. § 1451(a)(1).

The interaction of arbitration, litigation, and interim payments produces devilish questions of appellate jurisdiction. Most of these involve doubly contingent orders. All judicial orders under §§ 1399(c)(2) and 1401(d) are "interim" in the sense that the arbitrator's decision (and any proceedings in court to review or enforce it) ultimately fixes the liability; the employer may end up paying more or receiving a refund. Some judicial orders are interim even within the litigation: the employer may seek an injunction against the arbitration or collection, and the court may order "interim interim" payments pending its disposition of that request. Orders of this kind are neither final judgments nor traditional injunctions because the court plans to issue additional orders about the same subject in the same case.

Following a variant of the *Forgay* doctrine, see *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), courts have held that these "interim interim" orders to pay are injunctions (and hence appealable even though interlocutory) if and only if they expose the employer to irreparable harm. E.g., *I.A.M. National Pension Fund v. Cooper Industries, Inc.*, 789 F.2d 21 (D.C.Cir.1986); *Korea Shipping Corp. v. New York Shipping Ass'n*, 811 F.2d 124 (2d Cir.1987). The cases do not rely expressly on *Forgay* but deal with the appealability of an interlocutory order to pay money or turn over assets, the core of the *Forgay* principle. Cf. *Palmer v. Chicago*, 806 F.2d 1316, 1319–20 (7th Cir.1986) (orders requiring the immediate payment of money are appealable as "collateral" orders only when there is irreparable harm); *Uehlein v. Jackson National Life Insurance Co.*, 794 F.2d 300 (7th Cir.1986) (orders determining who holds the money stakes of a suit during litigation ordinarily are not appealable, as injunctions or collateral orders). Rule 54(b) is not a good candidate for another way to make "interim interim" payments appealable. Cf. *People Who Care v. Rockford Board of Education*, 921 F.2d 132, 134–35 (7th Cir.1991).

█ If the employer simply seeks relief from the statutory obligation to pay while the arbitration proceeds, then the district court will enter only one order. That is what happened here. The Fund obtained a judgment compelling Centra to pay its accrued liability and to make future payments as they come due. The order was entered on the form appropriate to civil judgments. Such an order is final and appealable under 28 U.S.C. § 1291. It is the end of the case. The invocation of Rule 54(b) is a distraction, for there is no other open claim in the litigation. A request to enforce (or set aside) the award initiates a new suit.

The possibility that the arbitrator will establish a different measure of liability does not make a decision nonfinal. An order to make interim payments differs

from an interim order to make payments. Suppose a court orders a construction company to post a bond, as its contract requires, while it works on a project; that it might never pay on the bond would not deprive the order of finality, because bonding during the interim is the whole dispute. So here: interim payments are the dispute; the court is deciding who holds the stakes during the interim, not what the final tally shall be; the arbitrator's award will not affect one way or the other the only subject of this litigation. Similarly, when the civil suit requests only an order to engage in arbitration, the order to arbitrate is a final decision under § 1291. *Goodall–Sanford, Inc. v. United Textile Workers*, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957). The terminating order of a case is a "final decision" by definition. Many such decisions may be revised, as by motion under Fed.R.Civ.P. 60, but the possibility of revision does not destroy finality.

*Robbins v. McNicholas Transportation Co.*, 819 F.2d 682, 685 (7th Cir.1987), raises the question whether this straightforward approach should be followed. One paragraph of *McNicholas* characterized even the ultimate disposition of a suit seeking interim payments as non-final, on the ground that the reckoning would abide the outcome of the arbitration. The court concluded, however, that the final decision in that case was appealable because it caused irreparable injury. This approach makes appellate jurisdiction turn on "irreparable injury", which implies that some final decisions are not appealable. Yet 28 U.S.C. § 1292(a)(1) gives appellate courts jurisdiction of appeals from all injunctions, not just those that cause demonstrable injury. Irreparable injury may be important in deciding *whether* a decree is an injunction, see *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987); *In re Springfield*, 818 F.2d 565, 567–68 (7th Cir.1987), but any "injunction" is appealable. *McNicholas* suggests that all dispositions of requests for interim payments are "injunctions", which if true would create a conflict with *I.A.M.*, which held that an "interim interim" order to pay is an injunction only if it causes irreparable injury.

*McNicholas* did not suggest that it was creating a conflict, so perhaps the panel did not mean its approach literally. More recent decisions conclude that an order designating who shall hold the stakes of a dispute during arbitration is a money judgment rather than an injunction. E.g., *Pacific Reinsurance Management Corp. v. Fabe*, 929 F.2d 1215 (7th Cir.1991). Cf. *Rosenfeldt v. Comprehensive Accounting Service Corp.*, 514 F.2d 607, 609–10 (7th Cir.1975) (Stevens, J.) (an attachment transferring control of the assets involved in the case pending final decision is not an injunction). The need to characterize the order as an injunction in *McNicholas* arose only because the panel thought that the pending arbitration sapped the district court's disposition of finality. Yet a judgment requiring the employer to pay money to the pension trust may be the only order the district court ever will enter. In this case, for example, the complaint asked for one thing, money, and the entire litigation has been concluded. The definition of a final decision is one wrapping up the case and leaving "nothing for the court to do but execute the judgment", *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945)—which is exactly what this decision does. Jurisdictional rules should be clear, and we think it best to simplify the subject by holding that the terminating order of any suit seeking "interim payments" under § 1399(c)(2) is a final decision, appealable under 28 U.S.C. § 1291. We have jurisdiction and proceed to the merits.

II

Section 1399(c)(2) specifies that "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." Section 1401(d) adds that an employer who fails to pay "shall be treated as being delinquent in the making of a contribution required under the plan

(within the meaning of section 1145 of this title)." The Fund determined Centra's withdrawal liability; Centra has not paid; the court ordered Centra to pay the amount demanded by the Fund, which it "shall" pay, according to § 1399(c)(2), notwithstanding Centra's request for arbitration and its loud protest that it does not owe what the Fund wants—that, indeed, it has reentered the Fund and so owes nothing at all, under 29 C.F.R. § 2647.4(a).

■ Centra presents three reasons why it believes the Fund's computation to be erroneous. They are neither here nor there, and we do not discuss them. Whether the Fund has computed the withdrawal liability correctly is the question for the arbitrator. 29 U.S.C. § 1401(a)(1). Section 1399(c)(2) calls on the employer to pay "notwithstanding" contentions that may prevail in the end. The MPPAA puts payment ahead of decision. *McNicholas*, 819 F.2d at 685. Centra wishes it were the other way around, but the employers lost that fight a decade ago in Congress. See *Debreceni v. Merchants Terminal Corp.*, 889 F.2d 1, 5–6 (1st Cir.1989); *United Retail & Wholesale Employees Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 132–34 (3d Cir.1986); *Marvin Hayes Lines, Inc. v. Central States Pension Fund*, 814 F.2d 297, 299 (6th Cir.1987); *Trustees of Amalgamated Insurance Fund v. Geltman Industries, Inc.*, 784 F.2d 926, 932 (9th Cir. 1986), all holding that the employer must pay while awaiting the outcome of the arbitration.

■ Although Centra believes that the Fund is equitably estopped to collect interim payments because of what Centra believes is "reprehensible" action by the Fund, nothing in the MPPAA gives the district judge a chancellor's foot veto over collection. Name-calling gets Centra nowhere. Congress created an obligation to make payments on withdrawing from underfunded multiemployer pension plans. It ordered employers to pay on demand. All the judge must decide in an action to collect the interim payments is who holds the stakes during resolution of the dispute.

■ *McNicholas* concludes that because Congress did not compel district judges to order interim payments in every case, "the court should have some discretion, similar to that exercised in deciding whether to issue a preliminary injunction, to decline to use its injunctive power to compel payment." 819 F.2d at 685–86. Doubtless there is a residuum of discretion, *if* orders to make interim payments are equitable rather than legal relief. Cf. *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803–04, 72 L.Ed.2d 91 (1982); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946). Our conclusion above that final orders to make interim payments under § 1399(c)(2) are money judgments calls this statement into question. At all events, we are confident that the sort of discretion contemplated in *McNicholas* offers Centra no comfort.

Consider why Congress gave pension funds the right to hold the stakes while arbitrators resolve the disputes. Trucking is a competitive business. Many of the firms are small and thinly capitalized. During the time consumed by the arbitration and any proceedings to review or enforce the award, some will go out of business. The employers most likely to feel the pinch of interim payments are those skating closest to the edge, posing the greatest risk to the plans if payment is deferred. Other employers, not at risk of insolvency, may distribute assets during the interim, making collection difficult even if the pension plan prevails. In either case, the trust is left with the obligation to the workers without a corresponding source of funds. Much of pension law is designed to alleviate this risk. Cf. *Central States Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir.1989) (in banc). Although the trust bears substantial risk if the employer holds the stakes pending final resolution, the employer faces no corresponding risk if the fund holds the stakes. Pension trusts are solvent, diversified, regulated institutions. Short of a collapse comparable to 1929, funds will be able to

repay any withdrawal liability that a court or arbitrator ultimately determines they should not have collected.

Reduction in the risk of non-payment is not the only rationale for letting pension funds hold the stakes. Arbitration is supposed to speed final decision and reduce the costs of getting there. Efforts to alleviate the "harshness" of the MPPAA by examining the employer's probability of success before the arbitrator frustrate achievement of that objective. Instead of one speedy decision, there will be three slow ones. First the employer will resist making interim payments; the district judge will have to examine the merits of the plan's claim to determine the employer's probability of success before the arbitrator. Next the arbitrator will take evidence and decide. Finally the loser will return to court and ask the judge to set aside the arbitrator's decision. *Iron Workers Pension Trust v. Allied Products Corp.*, 872 F.2d 208 (7th Cir.1989). Such a sequence would make a mockery of the MPPAA, would be worse (more costly, more time-consuming) than leaving the entire decision to the court in the first place. *Production & Maintenance Employees Local 504 v. Roadmaster Corp.*, 916 F.2d 1161, 1163 (7th Cir. 1990). We hesitate to use an "equitable" standard that causes the MPPAA to achieve the opposite of Congress' aim.

■ The court's option to consider "the employer's probability of success before the arbitrator, and the gravity of any economic hardship caused by payment of installments while awaiting decision", *McNicholas*, 819 F.2d at 685, is therefore not an invitation to pre-try the case or to excuse payments by those employers whose precarious financial condition creates the greatest risk to the pension plan. Two courts of appeals have held that judges have no general equitable power to excuse interim payments. *Debreceni*, 889 F.2d at 6–8; *Marvin Hayes Lines, Inc. v. Central States Pension Fund*, 814 F.2d 297 (6th Cir.1987). We agree. *McNicholas* is at most a recognition that if the fund's claim is frivolous—if the arbitrator is almost certain to rule for the employer—then the

plan is engaged in a ploy that a court may defeat. When an employer is thinly capitalized and could be propelled into bankruptcy by interim payments, an unscrupulous pension plan could squeeze something from the firm without much chance of success before the arbitrator. Having assured itself that the plan's claim is legitimate, however, the court should order the making of interim payments and leave the rest to the arbitrator.

■ The Fund has a colorable claim against Centra, which does not deny that Mason & Dixon owed substantial withdrawal liability. During the last appeal, Centra argued that it is not responsible for Mason & Dixon's obligations; it lost. 888 F.2d at 1163–64. See also *Central States Pension Fund v. Chatham Properties*, 929 F.2d 260, 263–64 (6th Cir.1991). Centra's other defenses and excuses are for the arbitrator to assess. Maybe Centra will triumph, maybe not; we do not inquire whether this is likely. Centra appears to be attempting to drag out this litigation because it believes that it can earn more on the money than the court charges in pre-judgment interest. That is not a good reason to resist payment. A belief that the rate of interest the pension plan will pay on money it collects and refunds is too low is no better reason to defer payment. The rate has been set by regulation, 29 C.F.R. § 2644, and a court should not allow its belief that the rate is too high or too low to influence its decisions in an action under §§ 1399(c)(2) and 1451.

### III

■ Centra has paid nothing on the judgment. It does not have assets in the Northern District of Illinois. The Fund sought to make the judgment collectible elsewhere during Centra's appeal by asking the district court to permit registration in another district court under 28 U.S.C. § 1963. The district judge declined, believing that Centra's appeal deprived him of jurisdiction to make the findings required by § 1963. 1990 WL 156305, 1990 U.S. Dist. LEXIS 13505. This was mistaken. The notice of appeal blocks the district

court from taking any action affecting the questions presented by the appeal, *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982); *Apostol v. Gallion,* 870 F.2d 1335, 1337 (7th Cir.1989), but does not prevent the court from handling collateral matters such as the award of costs and the posting of a supersedeas bond. Findings under § 1963, like the decision to require or excuse the filing of a bond pending appeal, affect only the collection of a judgment. A court with jurisdiction to authorize execution if the appellant does not post a bond— power a district court possesses during an appeal—also may make the findings that under § 1963 authorize execution in another district. The statute calls on district judges to make "good cause" findings while an appeal is pending; it would be a hollow law indeed if district judges lack jurisdiction.

Instead of asking us to inform the district court that our jurisdiction of the appeal did not exclude its own jurisdiction to act on the motion under § 1963, the Fund filed a petition requesting the district court to hold Centra in contempt of court. The court declined, reasoning that it had not entered an injunction and therefore could not hold Centra in contempt. 1990 WL 253616, 1990 U.S. Dist. LEXIS 17766. For the reasons given in Part I of this opinion, the district court was correct.

■■■ Orders to pay money may be cast as injunctions. A judge concluding that a party was frustrating its decision (and the purposes of the MPPAA) by compelling the pension plan to scoot across the nation picking up a wheelbarrow here and a spare tire there to satisfy its entitlement to interim payments could issue mandatory relief casting the burden on the employer. Judge Marshall was not asked to *revise* his order to achieve this; the Fund instead contended that the judge had *already* entered an injunction. He had not—something the Fund should have inferred from the use of Rule 54(b), a pointless act if the award was an interlocutory injunction. The Fund should not have abandoned § 1963. Now that the appeal is over, however, the Fund can attach Centra's assets wherever it finds them. To facilitate speedy collection, we shall issue our mandate today.

AFFIRMED.