951 F.2d 152
 14 Employee Benefits Cas. 2121
 TRUSTEES OF THE CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE
WORKERS UNION (INDEPENDENT) PENSION FUND, Plaintiff-Appellee,
v.
RENTAR INDUSTRIES, INCORPORATED, Ratner Enterprises,
Incorporated and Rentar Trailer and Container, et
al., Defendants-Appellants.
 Nos. 90-3214, 90-3473.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 23, 1991.
Decided Dec. 20, 1991.
 
 Joseph M. Burns, David S. Allen (argued), Karen I. Engelhardt, Jacobs, Burns, Sugarman & Orlove, Vincent D. Pinelli, Edward J. Burke, Mary P. Burns, Burke, Smith & Williams, Chicago, Ill., for plaintiff-appellee.
 Arnold L. Burke (argued), Siegan, Barbakoff & Gomberg, David R. Kugler, Daniel Kuznetsky, Kugler, Deleo & D'Arco, Chicago, Ill., for defendants-appellants.
 Before COFFEY and FLAUM, Circuit Judges, and ENGEL,* Senior Circuit Judge.
 ENGEL, Senior Circuit Judge.
 
 
 1
 Rentar appeals from denial of its motion for a hearing to demonstrate irreparable harm resulting from an order compelling interim payment of ERISA withdrawal liability. 29 U.S.C. § 1399(c)(2). The sole issue before us is whether the magistrate had discretion to grant relief from the seemingly inflexible requirement under 29 U.S.C. § 1399(c)(2) that an allegedly withdrawing employer make interim payments pending arbitration on the issue of its liability. While the Seventh Circuit has found a narrowly limited discretion to intervene, we hold the court did not abuse its discretion here because the employer failed to make any colorable initial showing of clear right or irreparable injury. We therefore affirm.
 
 I. Background
 
 2
 Couzens was an affiliate and/or wholly owned subsidiary of Rentar, Inc. On December 29, 1982, Rentar, Inc. sold ninety percent of Couzens' stock to Levitt. On February 7, 1983, Couzens filed an involuntary petition in bankruptcy. Prior to this Couzens had been an employer contributing to the Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund ("the Fund"). See 29 U.S.C. § 1002. On January 21, 1983, Couzens had stopped contributing to the Fund, and when it ceased operations it effectuated a complete withdrawal from the Fund. See 29 U.S.C. § 1383.
 
 
 3
 When an employer withdraws from a multiemployer pension plan, the employer becomes immediately liable for its proportionate share of unfunded vested benefits. 29 U.S.C. § 1381. Congress designed this requirement in order to establish greater financial stability for these plans. H.REP. NO. 869, PART I, 96th Cong., 2d Sess. 51-54 (1980), reprinted in 1980 U.S.Code Cong. & Admin.News, 2918, 2919-2922. The Employee Retirement Income Security Act (ERISA) further provides that upon withdrawal, a multiemployer pension fund is to determine the employer's withdrawal liability, notify it of the amount, and then collect the money. 29 U.S.C. § 1382. The Fund calculated Couzens' withdrawal liability to be $1,082,517, and notified it of the amount.
 
 
 4
 Collection of the funds proved to be a bit more difficult; Couzens' insolvency forced the Fund to seek other less direct avenues for payment. The Fund decided to look to the previous owner of Couzens, Rentar, Inc. and its associated companies to satisfy the liability. The Fund attempted to have the sale of Couzens disregarded for purposes of determining and collecting withdrawal liability by alleging that the principal purpose of the December 1982 sale of Couzens by Rentar, Inc. was "to evade or avoid [withdrawal] liability." 29 U.S.C. § 1392(c).
 
 
 5
 Understandably, the Rentar defendants ("Rentar") disputed the Fund's view of their liability. In November 1989, the magistrate ordered Rentar and the Fund to arbitrate their differences. See 29 U.S.C. § 1401. The Fund then sought interim payments of withdrawal liability from Rentar. The 1980 Multiemployer Pension Plan Amendments Act (MPPAA), to further guarantee fund stability, requires withdrawal payments be made pending arbitration:
 
 
 6
 Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.
 
 
 7
 29 U.S.C. § 1399(c)(2). The MPPAA also provides:
 
 
 8
 Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration ...
 
 
 9
 29 U.S.C. § 1401(d).
 
 
 10
 Despite this inflexible language, in limited situations courts have been held to have some discretion in ordering payments. See Robbins v. McNicholas Transportation Co., 819 F.2d 682 (7th Cir.1987). McNicholas provides for a review by the court of the employer's likelihood of success and the irreparable harm to be suffered due to payment. Rentar sought to present evidence regarding the composition of the control group and the harsh economic effect of the order. Rentar appeals from the order compelling interim payment, and denial of its motion seeking a hearing to present more evidence.
 
 II. Jurisdiction
 
 11
 Before our recent decision in Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc., 935 F.2d 114 (7th Cir.1991), orders compelling interim withdrawal payments were treated as orders granting or denying injunctions under 28 U.S.C. § 1292(a)(1). See McNicholas, 819 F.2d at 685. As such, the orders could be appealed only if they "might have a 'serious, perhaps irreparable consequence.' " Id., quoting I.A.M. Nat'l. Pension Fund v. Cooper Indus., 789 F.2d 21, 24 (D.C.Cir.1986). To "simplify the subject," Central Transport held that these orders are not injunctions, but rather are money judgments, final and appealable under 28 U.S.C. § 1291. Central Transport, 935 F.2d at 117.
 
 
 12
 The Fund challenges the application of the Central Transport rule to the order in this case. While the order in Central Transport compelled payment of the accrued liability and ordered the employer to make future payments as they came due, the Rentar order did not grant prospective relief but ordered payment only of the amount currently due and owing. Because they did not get all of the relief they were seeking and could go back to court to force future payments, the Fund contends that the order could not be considered final. We disagree because this argument places too much emphasis on the scope of the relief granted. Central Transport held that "the terminating order of any suit seeking 'interim payments' under § 1399(c)(2) is a final decision, appealable under 28 U.S.C. § 1291." Central Transport, 935 F.2d at 117. The failure to include prospective relief does not make the order any less final.
 
 
 13
 III. Requirement of a Hearing to Show Irreparable Harm
 
 
 14
 Rentar claims the district court had to establish "some procedure" by which an allegedly withdrawing employer could demonstrate the irreparable harm it would suffer as a result of the court's order compelling it to make interim payments. Originally, Rentar sought a hearing, but has since modified the request to the broader form outlined above. For support Rentar relies upon McNicholas.
 
 
 15
 In McNicholas the employer appealed from an order compelling interim payments, arguing that making the payments would result in "severe financial hardship and essentially preclude its resumption of operations." McNicholas, 819 F.2d at 685. It produced figures showing a current annual income barely exceeding the required monthly payments. Under these circumstances the court ruled, "where the trustees bring an action to compel payment pending arbitration, the court should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business" when exercising its discretion over the issuance of the order compelling payments. Id.
 
 
 16
 In Central Transport we also addressed the question of the court's discretion to order interim payments:McNicholas is at most a recognition that if the fund's claim is frivolous--if the arbitrator is almost certain to rule for the employer--then the plan is engaged in a ploy that a court may defeat.... Having assured itself that the plan's claim is legitimate, however, the court should order the making of interim payments and leave the rest to the arbitrator.
 
 
 17
 Central Transport, 935 F.2d 114, 119 (7th Cir.1991). We hold here that irreparable harm becomes important only if the employer makes an affirmative showing that the pension fund lacks a colorable claim. This standard is compatible, we believe, with the due process interests of the employer and with those of the statutory scheme.
 
 
 18
 Rentar offers two reasons why the Fund's case is frivolous. First, the "Rentar defendants were not a parent company or controlled group of Couzens at the time of its alleged withdrawal." Rentar's continued reliance on this as a defense ignores the nature of the Fund's claim. Section 1392 allows a pension fund to reach even companies who did not own or control a company at the time of withdrawal.[1] Second, "[c]omposition of Rentar group should be determined at hearing or by other presentation of evidence of its composition." Rentar offers no support for this assertion in its briefs, choosing instead to focus on the irreparable harm issue.
 
 
 19
 Even assuming these two claims would be enough to warrant a determination that Rentar might succeed before the arbitrator, Rentar has offered no evidence whatever to support its assertion of irreparable harm. Rentar has submitted no affidavit or balance sheet to the court. Nor does it argue that due process requires a hearing, but merely asserts its view that the request was "not out of line." While this may be true, it does not mean that the district court was required to grant a hearing or "other procedure" when no issue of fact existed. It should have come as no surprise to Rentar that without the production of at least some evidence to raise a factual question, the district court was under no obligation to hold a hearing on the question or to establish some other procedure to receive evidence.
 
 
 20
 For these reasons, the decision below is AFFIRMED.
 
 
 
 *
 Honorable Albert J. Engel, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 29 U.S.C. § 1392(c) provides: "If the principal purpose of any transaction is to evade or avoid [withdrawal] liability, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." The premise of this section is that the defendant did not actually own or control the employer at the time of its withdrawal