**TRUSTEES OF the TAMPA MARITIME ASSOCIATION–INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION PLAN AND TRUST, Plaintiffs,**

v.

**S.E.L. MADURO (FLORIDA), INC., Defendant.**

No. 94–107–CIV–T–17A.

United States District Court, M.D. Florida, Tampa Division.

April 12, 1994.

---

**2.** *Antoniou v. Thiokol Corporation Group Long Term Disability Plan,* 829 F.Supp. 1323 (M.D.Fla. 1993).

James Maxwell Landis, Terri L. Gillis, Foley & Lardner, Tampa, FL, for plaintiffs.

Charles J. Thomas, Thompson, Sizemore & Gonzalez, P.A., Deborah Susan Crumbley, Tampa, FL, Donald T. Ryce, Donald T. Ryce, P.A., Princeton, FL, for defendant.

## ORDER ON PLAINTIFF'S EMERGENCY MOTION TO ENFORCE INTERIM PAYMENT REQUIREMENTS; DEFENDANT'S MOTION TO DISMISS; AND DEFENDANT'S MOTION FOR ATTORNEY'S FEES

KOVACHEVICH, District Judge.

This cause is before the Court on the following pleadings: Plaintiff's Emergency Motion to Enforce Interim Payment Requirements and its Memorandum of Law in support thereof (Docket Nos. 2 and 3); Defendant's Memorandum in Opposition to Plaintiff's Emergency Motion to Enforce Interim Payment Requirements (Docket No. 8); Defendant's Motion for Attorney's Fees and Costs under 28 U.S.C. § 1927 and Supporting Memorandum (Docket No. 11); and Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted and supporting Memorandum (Docket No. 12).

## I. BACKGROUND

Plaintiff, Trustees of the Tampa Maritime Association–International Longshoremen's Association Pension Plan and Trust ("Trustees"), filed this cause of action against Defendant, S.E.L. Maduro (Florida), Inc., ("Maduro"), to collect statutorily required interim payments pursuant to the Employee Retirement Income & Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub.L. 96–364, 94 Stat. 1208 (1980). Plaintiff alleges these interim payments are owed by Defendant as a result of its alleged partial withdrawal from the trust. Pursuant to ERISA, Defendant, as an employer member of the trust, makes contributions to the trust on behalf of its union member employees. By letter dated June 8, 1993, Plaintiff notified Defendant that Defendant had partially withdrawn from the plan, demanded payment of withdrawal liability, and provided a schedule for payment. Under 29 U.S.C. § 1399(c)(2), Defendant's first payment was due no more than sixty days after receiving the demand for payment, regardless of any objection to the liability or request for review.

In September, 1993, Defendant requested reconsideration of Plaintiff's calculations of Defendant's liability. Plaintiff responded with a decrease in the amount requested, and a special meeting was held in November where Defendant presented its reasons for its reconsideration request.

By letter dated December 13, 1993, Plaintiff notified Defendant that Defendant had in fact partially withdrawn, but that the withdrawal had occurred in 1990 and 1991, not in 1989, as had been stated in the original statutory notice and demand. The amount of partial withdrawal liability demanded in the December letter was $680,322.00, which was

$7,623.00 more than demanded in the June 8, 1993 letter. Both parties subsequently filed Notices of Initiation of Arbitration.

Plaintiff filed its complaint in this case to compel interim payments on January 21, 1994, and filed its Emergency Motion to Enforce Interim Payment Requirements ("Emergency Motion") on February 15, 1994. On February 16, 1994, that motion was granted and was subsequently vacated pending further review.

### A. Plaintiff's Allegations

Plaintiff alleges that pursuant to ERISA, as amended by MPPAA, Defendant is required to make interim payments on its withdrawal liability pending arbitration. Plaintiff further claims it is entitled to accelerate the complete amount of liability because Defendant did not begin its payments by January 15, 1994, which was the extended date Plaintiff offered in its December 13, 1993 letter.

### B. Defendant's Allegations

Defendant alleges that Plaintiff's notice of liability was not given pursuant to statutory requirements, in that the original notice claimed withdrawal liability from 1989, and not until December 1993 was partial withdrawal liability for 1990 and 1991 asserted. Defendant claims the purpose of notice was not fulfilled because of the flaws in the notice.

Defendant further alleges it will suffer irreparable harm if compelled to make interim payments. Defendant contends impairment of its due process rights if Plaintiff is permitted to collect interim payments, and that the interim payment scheme itself violates due process. Defendant requests denial of Plaintiff's Emergency Motion, dismissal of Plaintiff's complaint, and attorney's fees incurred as a result of its efforts to obtain vacation of the Court's Order granting Plaintiff's Emergency Motion.

## II. ANALYSIS

### A. Notice of Withdrawal Liability

■ ERISA and MPPAA require that plan trustees meet four procedural requirements before making a claim for interim withdrawal liability payments. Those requirements are: (1) determine that the employer has withdrawn from the plan; (2) determine the amount of the employer's liability; (3) notify the employer of the amount of liability; and (4) demand payment according to the schedule. *Carrier's Container Council v. Mobile Steamship Assn.–I.L.A. Pension Plan,* 896 F.2d 1330, 1346, n. 27 (11th Cir.1990). Once this demand is made, an employer has the right to request review or reconsideration within ninety days. The sponsor is then required to review the employer's request, and notify the employer of its decision and the basis therefor. Under 29 U.S.C. § 1399(c)(2), interim payments on withdrawal liability must commence no more than sixty days after receipt of notice, despite an objection an employer poses to liability, and any request for review of the liability decision.

In this case, Plaintiff gave Defendant notice of liability, the amount of liability, a payment schedule, and demanded payment according to the schedule in a letter dated June 8, 1993. This letter stated that the liability was incurred as a result of withdrawal in 1989. Under the statute, interim payments would have commenced in August, 1993. After Defendant's request for review, Plaintiff recomputed the withdrawal liability, and notified Defendant of that recomputation and the new amount on August 2, 1993, four days before the first payment was due. Plaintiff, also in that letter, offered to allow Defendant to defer payment of the increase due under the recomputation until the installment due on November 4, 1993. A further recomputation in September changed the amounts due in each installment, but not the total amount. At that time, Defendant had not made the payment due on August 4, 1993, and to date, has not made any payments.

■ After further review, by letter dated December 13, 1993, Plaintiff advised Defendant that Defendant was liable for partial withdrawal liability for 1990 and 1991, not 1989, and that those payments were due in four installments beginning by January 15, 1994. This letter contained the required elements of notice under the statute. Although Plaintiff's position is that the new payment schedule was devised out of the goodness of

the Trustees' hearts, and Plaintiff did not consider it to be the original statutory notice and demand of withdrawal liability, this Court considers it to be the notice and demand for Defendant's alleged partial withdrawals in 1990 and 1991. This letter contained the withdrawal determination, the liability amount and payment schedule, and demanded payment. This letter's only deficiency, were it the only notice to Defendant, is that it required the first payment to commence in far less than sixty days. Although Defendant had prior notice that it had partially withdrawn, there had been no allegations of a withdrawal in those years, which deficiency could conceivably have prejudiced Defendant in its ability to respond to the liability assessment.

For these reasons, the Court finds the December 13, 1993 letter to be the statutory notice and demand to Defendant, and Defendant could not have been in default on its payments until mid-February 1994. This Court has considered that the Complaint in this case (Docket No. 1) was filed on January 21, 1994, before Defendant was in default on its withdrawal liability obligations, but has determined that any issues raised by that fact are moot because Defendant has now been in default since mid-February of 1994.

Defendant claims that the December letter is insufficient as notice of liability because it changed the year on which liability is based. That contention is not supported by case law. In *Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* interim payments were held to be required where the trustees claimed partial withdrawal liability in May 1982, and the facts indicated that the partial withdrawal might not have taken place until January 1984. *Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 814 F.2d 297 (6th Cir.1987).

■ The MPPAA requires an employer to make interim payments during the pendency of any dispute about the withdrawal liability. *Carrier's Container Council,* 896 F.2d at 1345–1346; *see also* 29 U.S.C. §§ 1399(c)(2) and 1401(d). The court in *Carrier's Container Council* noted that the statute's mandatory language leaves the court with *no* discretion not to order interim payments, and held that the trial court should have ordered the

defendant employer to begin interim payments.

■ Furthermore, where Defendant is given the statutorily required time to respond (ninety days to request reconsideration and sixty days to commence payments), Defendant cannot complain that notice was insufficient. As notice was given on December 13, 1993, Defendant had 90 days to request reconsideration, and sixty days to commence payments, despite Plaintiff's claims to the contrary. Accordingly, this Court finds that since February, 1994, Defendant has been obligated to make interim payments to Plaintiff, pending the outcome of the arbitration requested by both parties.

### B. Acceleration of Withdrawal Liability Payments

Plaintiff's Emergency Motion does not request the full and accelerated amount of Defendant's withdrawal liability, but its Complaint does, and Defendant's response to Plaintiff's Emergency Motion asserts that the request is inappropriate under the facts of this case.

■ Under 29 U.S.C. § 1399(c)(5), when an employer is in default on its withdrawal liability payments, the plan may accelerate amounts due and owing. Default does not occur until the sixty-first day after demand, as an employer has sixty days after demand to commence payments. Furthermore, when an employer timely seeks arbitration, the claim may not be accelerated. *Carrier's Container Council,* 896 F.2d at 1346 n. 29. In this case, as previously stated, Defendant was not in default at the time acceleration was requested. Defendant filed its Notice of Initiation of Arbitration on February 7, 1994, less than sixty days after the December 13, 1993 notice and demand. Because Defendant timely filed its request for arbitration, this Court finds that Plaintiff is not entitled to an acceleration of its claim for withdrawal liability payments.

### C. Irreparable Harm

■ A few circuits recognize an exception to the requirement of ordering interim payments pending arbitration. However, this

exception is limited to circumstances where the employer makes an affirmative showing that the pension fund lacks a colorable claim. *Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Rentar Industries, Inc.,* 951 F.2d 152, 155 (7th Cir.1991).

This Court finds it unlikely that the Eleventh Circuit would recognize this exception, in light of its holding in *Carrier's Container Council* that the court has no discretion to not order interim payments. *Carrier's Container Council,* 896 F.2d 1330, 1346. (11th Cir.1990). The cases Defendant cites in support of the exception were all decided prior to the *Carrier's Container Council* decision, and the Eleventh Circuit has not, in subsequent decisions, receded from its view in that case. Even in the event that an irreparable harm exception were available in this jurisdiction, Defendant has made no showing that Plaintiff lacks a colorable claim. For that reason, the exception would not apply in this case, and this Court so finds.

### D.  Defendant's Due Process Claims

#### 1.  Prosecutorial Bias by Trustees

In Defendant's request to Plaintiff to review Defendant's liability for partial withdrawal, Defendant included a section alleging misfeasance and malfeasance by Plaintiff. In Defendant's memorandum opposing Plaintiff's Emergency Motion, Defendant details hostilities between the parties, and exchanges that occurred at the November 3, 1993 meeting regarding Defendant's request for review. On the basis of these hostilities, and in reliance on *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California,* — U.S. —, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993), Defendant claims requiring interim payments to Plaintiff would violate its due process rights. Defendant alleges current underfunding of the pension plan is a result of Plaintiff's misfeasance and/or malfeasance, and that Plaintiffs are attempting to replenish the fund by assessing partial withdrawal liability on Defendant.

■ Defendant's request for relief on this basis must fail for two reasons. First, interim payments are intended to be made pending resolution of disputes regarding withdrawal liability by arbitration. Claiming a dispute as a reason for nonpayment is clearly contrary to the statutory language and purposes. If it is subsequently determined that an employer overpaid, or that there was no withdrawal liability, the appropriate amount of payment, with interest, is refunded. 29 U.S.C. § 1401(d).

The second reason is that Defendant has misunderstood the Supreme Court's holding in *Concrete Pipe.* It is true that in *Concrete Pipe* the Supreme Court recognized that trustees may be biased, and in fact "owe an exclusive duty to the fund". *Id.* at —, 113 S.Ct. at 2276. However, in *Concrete Pipe* and in *Marshall v. Jerrico,* 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980), the Supreme Court found alleged bias of trustees and an agency administrator to be ultimately inconsequential because the duties performed by those officials were enforcement, not adjudicatory functions. *Concrete Pipe* — U.S. at —, 113 S.Ct. at 2277–2278; *Marshall* 446 U.S. at 247–250, 100 S.Ct. at 1615–1617. The employer in *Marshall,* objecting to an assessed violation of a child labor law, was entitled to a de novo review by an administrative law judge. The employer in a withdrawal liability case has resort to arbitration. These latter proceedings are the "initial adjudications" at which due process requires an unbiased decision-maker. *Marshall,* 446 U.S. at 247 n. 9, 100 S.Ct. at 1615 n. 9; *Concrete Pipe* — U.S. at —, 113 S.Ct. at 2278. The employer in a withdrawal liability case may request a plan sponsor to "review any specific matter related to the employer's liability and schedule of payments", and the plan sponsor must respond. In *Concrete Pipe,* the Supreme Court determined "this hardly amounts to 'adjudication'". *Concrete Pipe* at —, 113 S.Ct. at 2278 n. 11. Because the plan sponsor's determinations are made only in an enforcement capacity, subject to review by a neutral arbitrator, *Concrete Pipe* held that despite the burden of proof resting on the employer at adjudication, there is no constitutional defect in the subject statutes because of trustee bias. For the foregoing reasons, this Court finds that Defendant's payment of interim payments to Plaintiff, despite any bias of Plaintiff in favor

of the plan Plaintiff serves, will not impair Defendant's due process rights.

### 2. MPPAA's Interim Payment Scheme

■ Defendant argues that the interim payment scheme itself violates due process. This argument is substantially the same as Defendant's argument above that interim payments made to Plaintiff violate Defendant's due process rights. Defendant concedes that all the courts which have considered the constitutionality of the interim payment scheme have concluded that those statutory provisions do not violate the employer's procedural due process rights. Defendant claims that this precedent must be reconsidered in light of two new Supreme Court cases.

Again, Defendant's reliance on *Concrete Pipe* is misplaced. For the same reasons that interim payments *to Plaintiff* do not violate Defendant's procedural due process rights, nor does the very requirement of the payments violate Defendant's due process rights. *Concrete Pipe* allows that while trustees may be biased, allowing them to collect interim payments is not a violation of due process because the trustees are enforcing ERISA and MPPAA, not acting in an adjudicatory capacity. Furthermore, the payments are made on a temporary basis; if an employer pays more than necessary, or pays needlessly, that employer will receive a refund with interest.

Additionally, this Court does not find that *U.S. v. James Daniel Good Real Property*, —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), changes the results of a constitutional analysis of the interim payment scheme. *Good* is factually distinguishable, where *Concrete Pipe* is precisely on point. *Good* involved a forfeiture of real property based upon a criminal conviction under state law. The statute involved in *Good* was not a statute that had been repeatedly challenged on the identical constitutional grounds and consistently upheld. *Good* does not change the *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), analysis in interim payment cases under ERISA, which analysis finds the interim payment scheme constitutional. For these reasons, this Court finds that the interim payment scheme of ERISA, as amended by MPPAA, does not violate Defendant's procedural due process rights.

### E. Attorney's Fees and Costs

Pursuant to 28 U.S.C. § 1927, Defendant has requested attorney's fees and costs it incurred while seeking to vacate the Court's February 16, 1994 Order granting Plaintiff's Emergency Motion to Enforce Interim Payment requirements. Defendant requests this relief based on the facts that such an "emergency motion" is not embodied in the MPPAA, that the motion was improperly filed before the Court obtained jurisdiction over Defendant, that Plaintiff did not adequately notify Defendant of the Emergency Motion, and that despite the Emergency Motion's equivalence to a motion for summary judgment, Plaintiff did not comply with Federal Rule of Civil Procedure 56 and its notice provisions.

■ The relief requested by Plaintiff in its Emergency Motion and in its complaint are materially the same. In its complaint, Plaintiff requests this Court to order Defendant to pay the full and accelerated amount of the withdrawal liability, together with costs and attorney's fees. The Emergency Motion requested interim withdrawal liability payments, which with attorney's fees and costs is the only relief Plaintiff would have been entitled to if it had been granted a summary judgment on its complaint. The similarity of requested relief indicates both the lack of an emergency, and an unwillingness to follow the rules of procedure regarding management of cases.

Plaintiff's notice to Defendant of the pending Emergency Motion was also deficient. At the time the Emergency Motion was filed with the court, service of process on Defendant had not been effectuated. The Emergency Motion itself was sent by first class mail, which, even ignoring the lack of an emergency, clearly indicates Plaintiff hoped the motion would be granted before Defendant received notice of it. Although Plaintiff could not find a faster method to notify Defendant of the Emergency Motion, Plaintiff was able to fax a copy of the Order and a demand for payment to Defendant two days after the motion was granted, on the eve of a holiday weekend. The facts of the relief requested in the complaint and Emergency Motion, combined with the notice Plaintiff

provided to Defendant lead this Court to question Plaintiff's compliance with the spirit of the Federal Rules of Civil Procedure, which require good faith and fair play, and disapprove ambush tactics and game-playing.

While Plaintiff classifies its motion as an "Emergency Motion" or a request for a temporary restraining order, and Defendant characterizes it as a motion for summary judgment, whichever it may be, it did not fulfill the requirements of the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Middle District of Florida. A motion for summary judgment under Fed.R.Civ.P. 56 requires ten days notice, and the Eleventh Circuit strictly adheres to that requirement. *U.S. v. One Colt Python .357 Cal. Revolver,* 845 F.2d 287, 289 (11th Cir.1988). Fed.R.Civ.P. 65 and Local Rule 4.05 govern the procedure for obtaining a temporary restraining order, and contain many requirements that Plaintiff did not meet. Local Rule 4.05 was not complied with in that the motion was not properly labeled, it did not contain support for the proposition that Plaintiff was threatened with imminent harm such that notice and hearing were impractical or impossible, it was not accompanied by a proposed form of a temporary restraining order meeting Rule 65(b) and (d)'s requirements, and the memorandum in support did not contain the requirements of Local Rule 4.05(4). *See* Local Rule 4.05 of the United States District Court for the Middle District of Florida; and Fed. R.Civ.P. 65.

28 U.S.C. § 1927 permits a court to order payment of excess costs, expenses and attorney's fees reasonably incurred as a result of an attorney or other person's conduct that multiplies proceedings in an unreasonable or vexatious manner. As this Court has found that Plaintiff's Emergency Motion served no purpose other than to request relief already requested, and to circumvent notice requirements and the spirit of the Federal Rules of Civil Procedure, this Court can only determine that the filing of the Emergency Motion was unreasonable, multiplicitious, and vexatious. For that reason, this Court finds Plaintiff liable to Defendant for Defendant's attorney's fees and costs incurred by Defendant in seeking to vacate the Court's February 16, 1994 Order granting Plaintiff's Emergency Motion to Enforce Interim Payment Requirements.

III. Conclusion

This Court has determined that Defendant received statutory notice and demand of its partial withdrawal liability by Plaintiff's December 13, 1993 letter, and Defendant should have commenced interim payments within sixty days of that date. This Court also finds that Plaintiff is not entitled to acceleration of its claim because Defendant filed a timely Notice of Initiation of Arbitration on February 7, 1994, before it was in default on its payments. The Court has determined that the interim payment scheme and allowing Plaintiff to collect interim payments do not violate Defendant's due process rights, and that an irreparable harm exception to the interim payment requirement does not exist in this Circuit.

The Court finds that Plaintiff has violated both the spirit and the letter of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Florida by the manner in which it sought interim payments through an "emergency motion". Accordingly, it is:

**ORDERED** that Plaintiff's "Emergency" Motion to Enforce Interim Payment Requirements is **granted.**

**ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief is **granted** as to that portion requesting dismissal of Plaintiff's claim to accelerate the entire amount of withdrawal liability payments due and owing, and is otherwise **denied.**

**ORDERED** that Defendant's Motion for Attorney's Fees and Costs under 28 U.S.C. § 1927 be **granted.** Affidavits shall be filed within 10 (ten) days.

**DONE and ORDERED.**