**John BOWERS, Donald Carson, James G. Costello, M. Brian Maher, Anthony Pimpinella, Anthony J. Tozzoli, and Peter F. Vickers, as Trustees for and on behalf of the NYSA–ILA Pension Trust Fund, Plaintiffs,**

v.

**COMPANIA PERUANA DE VAPORES, S.A., Defendant.**

**No. 88 Civ. 2128 (RWS).**

United States District Court,
S.D. New York.

June 9, 1988.

Lambos & Giardino (C.P. Lambos, Donato Caruso, of counsel), Thomas W. Gleason (Kevin Marrinan, of counsel), New York City, for plaintiffs.

Haight, Gardner, Poor & Havens (Juan A. Anduiza, Richard L. Jarashow, Mark C. Flavin, Irwin N. Rubin, John P. Marinan, of counsel), New York City, for defendant.

## OPINION

SWEET, District Judge.

Plaintiffs, trustees of the NYSA–ILA Pension Trust Fund ("PTF") have moved for an order staying arbitration initiated by defendant Compania Peruana De Vapores, S.A. ("CPV") and to compel interim withdrawal liability payments under the Multi–Employer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 *et seq.*, pending a resolution of this dispute. For the reasons set forth below, arbitration will not be stayed, but CPV will be required to make interim payments.

*Statutory Background*

In 1974, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 was enacted to protect private pension plans. Pursuant to this, the Pension Benefit Guaranty Corporation ("PBGC"), a government owned corporation, was created to guarantee payments to plan participants. However, ERISA did not adequately protect multiemployer plans. Before the enactment of MPPAA, an employer could withdraw from a plan without meeting its funding obligations, thus leaving the plan unable to meet its liabilities to those whose benefits had vested. Now, under the MPPAA, an employer who withdraws from a plan must still pay the plan's vested liabilities. *See generally T.I.M.E.—D.C. v. Management–Labor W & P Funds of Local 1730,* 756 F.2d 939, 943–44 (2d Cir.1985) (setting forth statutory scheme and history). "By placing the funding burden on the withdrawing em-

ployer, the Act relieves the PBGC of the potentially crippling burden of paying out inordinate amounts of insurance." *Id.*

Under MPPAA, a pension plan through its plan sponsor is to determine when or if an employer has withdrawn from a multiemployer plan and, based on a positive determination, to assess withdrawal liability.[1] *See* 29 U.S.C. §§ 1381, 1382, 1391. After an assessment is made, the sponsor is to notify the employer of the amount due and collect that amount. *Id.* at § 1382. The demand is to be made as soon as possible after withdrawal. *Id.* at § 1399(b)(1).

MPPAA thereafter sets forth a procedure by which an employer can challenge the assessment of withdrawal liability. First, within 90 days after receipt of notice, the employer may request review by the sponsor. *Id.* at § 1399(b)(2)(A). If a dispute persists, either party may resort to arbitration within specified time limits. *Id.* at § 1401(a).

*Facts*

CPV is a shipping company organized under the laws of Peru and wholly owned by the government of Peru. Because it calls on the port of New York and New Jersey, CPV is a member of the New York Shipping Association ("NYSA"). NYSA negotiated collective bargaining agreements with the International Longshoremen's Association on behalf of its members, thus making CPV a party to the agreements.

Employers who are parties to this collective bargaining agreement are required to contribute funds needed to provide longshoremen with employee benefits. A portion of the assessment revenues is contributed to PTF, which in turn provides the longshoremen with pension benefits. Prior to the events culminating in this dispute, CPV complied with its assessment obligations under the collective bargaining agreements.

Based on an alleged contribution decline in the three year period ending December 31, 1985, PTF determined that CPV had partially withdrawn from it. It thus notified CPV in a letter dated August 6, 1987 of the withdrawal, and it made a demand for periodic payments in accordance with an amortization schedule prepared pursuant to MPPAA.

CPV's first payment was due on October 1, 1987. However, on September 30, 1987, CPV requested review of the fund's claim. It also sought an extension of the deadline for initiating arbitration under 29 U.S.C. § 1401. On November 10, 1987, PTF sent a letter stating that CPV had sixty days to cure its failure to pay or it would be in default. The letter further states: "The trustees deny your request for an extension of time and demand strict adherence to the payment schedule."

According to CPV, counsel for both parties agreed on a deadline for the filing of arbitration until March 31, 1988, CPV calculating this based on its September 30 request for review. CPV included these calculations in a November 18, 1987 letter to the fund's counsel. However, PTF claims that it made no such agreement and that CPV's calculations are wrong. It claims that the November 10th letter constitutes a denial of CPV's request for an extension, and hence that the time to file for arbitration had past.

On March 28, 1988, PTF commenced this action. The original complaint requested only compliance with its demand for withdrawal liability installments. However, on March 30, 1988, CPV initiated arbitration before the American Arbitration Association ("AAA") contesting, among other things, its status as an employer under ERISA. PTF responded by objecting to arbitration as untimely and by filing an amended complaint to recover the entire amount of withdrawal liability on the grounds that CPV's failure to initiate arbitration in a timely fashion constitutes a waiver of its right to contest liability.

On April 29, 1988, PTF moved by order to show cause for an order staying the arbitration and requiring payment of ar-

---

1. Withdrawal can be complete, 29 U.S.C. § 1383, or partial, 29 U.S.C. § 1385.

rears as well as periodic payments pending the outcome of this dispute.

*Discussion*

The Stay

■ The question presented in this motion is not whether arbitration was timely filed, but whether this court or the arbitrator should decide whether CPV is time barred. Under the MPPAA, "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 [the withdrawal liability provisions] of this title *shall* be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis added). PTF contends that this decision is one for the court because the time limits for initiating arbitration do not fall within sections 1381 through 1399 but under § 1401, and because courts are empowered to determine whether the arbitrator has jurisdiction to hear disputes. CPV, on the other hand, contends that since arbitration is favored under the act, the arbitrator should decide whether arbitration is time barred.

In general, disputes with respect to withdrawal liability are to be resolved through arbitration under § 1401's mandate. This circuit and others have held that § 1401's direction to arbitrate functions not as a jurisdictional bar, but rather as an exhaustion of administrative remedies requirement. *ILGWU National Retirement Fund v. Levy Bros.*, 846 F.2d 879, 887 (2d Cir.1988); *T.I.M.E.–DC, supra,* 756 F.2d at 945; *Central States Southeast & Southwest Areas Pension Fund v. T.I.M.E.–DC, Inc.,* 826 F.2d 320, 327–28 (5th Cir.1987); *Grand Union Co. v. Food Employers Labor Relations Association,* 808 F.2d 66, 70 (D.C.Cir.1987); *c.f. Republic Industries v. Teamsters,* 718 F.2d 628, 635 (4th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).

As this circuit has noted:

Courts have recognized exceptions to the exhaustion doctrine in some situations when the doctrine's policies are not implicated. These policies include the application of the administrative body's superior expertise, promotion of judicial economy, and deference to the statutory scheme Congress created. The most common exceptions are found when the nonjudicial remedy is inadequate, statutory interpretation is required or there is a constitutional question.

*T.I.M.E.–DC, supra,* 756 F.2d at 945. The court went on to hold that resolution of the dispute in that case did "not implicate the underlying justifications for exhaustion" because there were "no questions of fact or issues of contract interpretation to resolve. Thus, 'an arbitrator skilled in pension and labor matters would have no superior expertise to offer.' " *Id.* (quoting *I.A.M. National Pension Fund Benefit Plan C v. Stockton Tri Industries,* 727 F.2d 1204, 1210 (D.C.Cir.1984)).

However, the exhaustion requirement is implicated in this motion. Indeed, judicial economy is best served by having the arbitrator determine if an arbitration demand was timely made.

First, determining whether a demand was made in a timely fashion in this case falls within the specific expertise of the administrative decisionmaker. Although there are no issues of contractual interpretation involved, there are issues of fact to be determined, for example whether there was an agreement between counsel as to the March extension date, if not, whether silence in response to CPV's letter constituted acceptance, or whether CPV relied on PTF's silence which may have made its calculation of the March arbitration date reasonable. Arbitration is the most expedient method of determining these facts.

Next, there may be issues of statutory interpretation involved. While this court recognizes that matters of statutory interpretation were often left to courts to decide, *see, e.g., T.I.M.E.–DC, supra,* 756 F.2d at 945, construction of statutes under MPPAA are not the exclusive province of the court, especially when the decisionmaker is called upon to construe a MPPAA section that Congress specifically reserved for arbitration, *see Flying Tiger Line v. Teamsters Pension Trust Fund,* 830 F.2d 1241, 1254 (3d Cir.1987). Whether the time limits of the arbitration provision have been observed does not fall within the sec-

tions specifically reserved, namely §§ 1381 through 1399. However, this is a mere procedural matter, and an arbitrator is as equipped to construe the limitations provision as is the court. *But see Robbins v. Chipman Trucking, Inc.*, 85 C 1489 (N.D. Ill. July 2, 1987) (LEXIS, Genfed Library, courts file).

The courts of appeals have implied that a failure to demand arbitration in a timely fashion can result in a presumption of waiver of arbitration. *See, e.g., Levy Bros., supra*, at 886–87; *I.A.M. National Pension Fund v. Clinton Engines*, 825 F.2d 415, 422 (D.C.Cir.1987); *Grand Union, supra*, 808 F.2d at 70. If arbitration is waived, "the amounts demanded by the plan sponsor under section 1399(b)(1) of [title 29] shall be due and owing on the schedule set forth by the plan sponsor." Thus, a finding by the arbitrator that CPV failed timely to request arbitration would quickly end this action.

CPV expresses concern that this court's assumption of jurisdiction would undermine Congress' plan for arbitration of withdrawal liability and thus the speedy resolution of disputes. This court is mindful of Congress' arbitration plan and of its concern that pension plans not go unfunded for long. Retaining jurisdiction over this matter would implicate that policy. If this court first determined that the demand for arbitration was timely filed, the stay would be lifted and the matter would be remanded for arbitration in any event. *See Flying Tigers, supra*, 330 F.2d 1241 (whether company is statutory employer is proper subject matter for arbitration); *c.f. Levy Bros., supra*, at 886 (The court states that *it* need not determine whether corporation is an "employer" because of facts of case but stating that "[s]everal circuit courts agree that an employer can be subject to the arbitration provisions of MPPAA, even if arguably it was not obligated to contribute to a multiemployer plan during the relevant period for determining withdrawal liability."). If that were the case, review of the arbitrator's decision could once again be sought in this court. However, in that event, as in the event that the arbitrator finds the demand was untimely, the arbitrator will have made all relevant findings

of fact, thus expediting the entire process. The arbitration thus will not be stayed.

Interim Payments

 Congress' desire to keep plans funded is also implicated on the issue of interim payments. Several courts have held that there is a cause of action to compel installment payments of withdrawal liability pending the outcome of a dispute between an employer and a sponsor. *See e.g., United Retail and Wholesale Employees Teamsters Union v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 133 (3d Cir.1986) (citing cases) *aff'd*, 107 S.Ct. 2172 (1987); *c.f. Robbins v. McNicholas Transportation Co.*, 819 F.2d 682, 685 (7th Cir. 1987) (determining its jurisdiction on appeal of issue from district court without expressly ruling on district court's jurisdiction); *T.I.M.E. D.C., supra*, 756 F.2d at 947 (deciding issue without statement as to jurisdiction). Thus, this court can maintain jurisdiction to determine this issue.

MPPAA provides that:

Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding request for review or appeal of determinations of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2). The arbitration provision further provides that:

Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination. If the employer fails to make timely payment in accordance with such final decision, the employer shall be treated as being delinquent in the making of a contribution required under the plan....

*Id.* at § 1401(d).

CPV asserts that interim payments have been denied when the company demon-

strates that such payments would cause it financial hardship and in any event that such payments have never been required of an entity that contests its status as a statutory employer.

While it is true that some circuits have denied interim payments if financial hardship would result, these courts have stated that a district court can use its discretion to deny payments if they would "constitute a crushing economic burden," *Republic Industries, supra,* 718 F.2d at 642, or would cause "unnecessarily harsh and unintended results." *Robbins, supra,* 819 F.2d at 686. Following the direction of the PBGC, however, this circuit has alleviated the possibility of the harsh results of default:

> The PBGC had ameliorated the potential harshness of this pay-first-question-later system by providing that the employer shall not be considered in default until the sixty-first day after the review and arbitration process is complete. PBGC regulations, 29 C.F.R. § 2644.2(c) (1984). The employer is still liable for payment during the review and appeal period, and interest accrues during that period, but the plan sponsor cannot consider the employer in default and accelerate its demand for the entire payment. The employer can also put its withdrawal liability into an escrow account, or pay the plan sponsor on time and get back any overpayment with interest. *See* 29 C.F.R. § 2644.2(d).

*T.I.M.E.–DC, supra,* 756 F.2d at 947. Thus, although payments are required, acceleration causing more of a financial burden is not.

CPV claims that interim payments of withdrawal liability would cause it severe financial hardship. However, the only evidence presented of this is a handwritten,

unnotarized letter from an official of the company to its counsel stating that such payments would cause hardship, and a conclusory statement of burden in CPV's memorandum of law. Such a scant showing is insufficient to defeat the purpose of the interim payment provisions, namely to avoid a lapse in plan funding. *See, e.g., T.I.M.E.–DC, supra,* 756 F.2d at 946. Thus, CPV is responsible for interim payments, and interest will accrue on those payments, although CPV will not be deemed to be in default until sixty days after a resolution of the dispute.[2]

CPV's contested employer status constitutes the merits of this case. If it is found not to be an employer and thus not owing withdrawal liability payments, its liability will be adjusted, or perhaps avoided, as provided for in the statutory scheme set forth above. This is not grounds for avoiding liability in the interim, especially when CPV has participated in the plan as an employer by making payments prior to the disputed withdrawal.[3]

The question of interest, exclusive of that accruing on interim payments, penalties and attorneys fees will not be addressed at this early stage and thus the motion for these payments is denied with leave to renew at the final disposition of this action. At that time, all such motions will be entertained.

*Conclusion*

PTF's motions for a stay of arbitration and for interim payments is granted to the extent set forth above. Its motion for fees is denied with leave to renew at the final disposition of this action.

IT IS SO ORDERED.

---

**2.** CPV can alternatively place payments in an escrow account or pay on time and avoid interest payments as set forth above.

**3.** CPV cites one district court opinion from the Eastern District of Michigan for the proposition that no court has required payments when the company disputes its employer status. It further cites *Flying Tiger, supra,* to support that

statement. While *Flying Tiger* dealt with the issue of employer status, the question of interim payments was not in issue. In fact, that court deemed it appropriate for the arbitrator to assess employer status even though the provision defining employer fell without those specifically earmarked for arbitration under § 1401.