United States Court of Appeals,

Fifth Circuit.

No. 93-5066.

TRUSTEES OF the PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Plaintiff-Appellee,

v.

MAR-LEN, INC., Defendant-Appellant.

Sept. 2, 1994.

Appeal from the United States District Court for the Eastern District of Texas.

Before GARWOOD, JOLLY and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

When an employer withdraws from a pension fund and there remain unfunded vested benefits, the employer is promptly required, upon demand by the pension fund, to make interim payments to the fund notwithstanding that it is legally challenging the underlying liability, ("pay now, dispute later"). *See* Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381 *et seq.* ("MPPAA"). In this case, the employer refused to make interim payments to the pension fund while it was arbitrating the underlying question of whether it owed anything at all. The pension fund brought this suit to compel the employer to make interim payments while the arbitration proceeding was ongoing. In this appeal, we are required to decide whether, when and under what standard, a withdrawing employer may be excused from this interim payment requirement.

1

MAR-LEN, Inc., a construction contractor active in industrial construction, was a participating employer in the Sabine Area Pipefitters Local 195 Pension Trust Fund (the "Sabine Fund"). In December 1988, MAR-LEN made its final payment into the Sabine Fund and completely withdrew from participation. At the time MAR-LEN withdrew, the Sabine Fund had unfunded vested benefits, thus, subjecting MAR-LEN to withdrawal liability. Approximately two years after MAR-LEN withdrew from the Sabine Fund, the fund merged with Plumbers and Pipefitters National Pension Fund ("NPF"). Soon after the merger and as required by statute, NPF notified MAR-LEN that it, MAR-LEN, had effectuated a complete withdrawal from the Sabine Fund in December 1988, and that it owed NPF $329,285 in withdrawal liability.

In response to NPF's notice of withdrawal liability, MAR-LEN initiated arbitration proceedings pursuant to 29 U.S.C. § 1401(a), which provides that any dispute of liability to the pension fund shall be resolved through arbitration. Although MAR-LEN was statutorily required to make "interim" withdrawal liability payments while arbitration of the underlying liability proceeded, *see* 29 U.S.C. §§ 1399(c)(2) & 1401(d)[1], MAR-LEN refused to make these interim payments. NPF filed this action to compel MAR-LEN to make interim payments.[2]

---

[1]*See infra* notes 6 and 7.

[2]We want to make it clear at the outset that two separate and distinct actions involving MAR-LEN and NPF are proceeding simultaneously. The first action, which was originally heard by

Before the district court rendered its decision in this case, an arbitrator ruled on the underlying question that MAR-LEN had incurred withdrawal liability to NPF, but that NPF had incorrectly calculated the total amount MAR-LEN owed. NPF then recalculated the amount and submitted the new figures to the arbitrator. After the arbitrator reached his conclusion in the case concerning the underlying liability, the district court rendered final judgment in this case in favor of NPF, stating that MAR-LEN owed NPF $223,565 in delinquent interim withdrawal liability payments. The district court entered final judgment in that amount[3] and also awarded NPF $72,681.25 in attorney's fees, $73,647 in interest, and $614.58 in costs.[4] MAR-LEN now appeals the district court's judgment awarding

the arbitrator and is now on appeal before the district court, concerns whether MAR-LEN owes withdrawal liability to NPF at all. This appeal concerns the second action that was brought in federal district court, which raises only the question of whether MAR-LEN is required to make interim payments while the first action concerning the underlying liability is pending.

[3]After the district court entered final judgment, NPF garnished approximately $14,000 from MAR-LEN. This money is currently being held in an escrow account. The amount awarded by the district court was the amount NPF had recalculated pursuant to the arbitrator's directions.

[4]Under the MPPAA, an employer's failure to make interim withdrawal liability payments creates a delinquency in contribution under 29 U.S.C. § 1451(b), which gives rise to the MPPAA's mandatory grant of attorneys' fees. 29 U.S.C. § 1132(g)(2)(D) ("In any action ... on behalf of a plan to enforce Section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan ... reasonable attorney's fees and costs of the action [ ] to be paid by the defendant."). MAR-LEN does not appear to contest the issue of attorney's fees. As such, we affirm the district court's award of attorney's fees. Moreover, because NPF prevailed on appeal, we award NPF that amount of attorney's fees reasonably necessary to defend the district court's judgment to be determined by the district court on remand. *See Carpenters Amended & Restated*

interim payments.[5]

## II

Under ERISA, as amended by the MPPAA, an employer withdrawing from a multiemployer pension trust, is required to cover its share of any unfunded pension obligations. 29 U.S.C. § 1381 (1985). After an employer completely withdraws from a multiemployer plan, the plan must notify the employer of the date it withdrew from the plan, determine the amount of withdrawal liability, if any, and collect that amount from the employer. 29 U.S.C. §§ 1382 & 1399(b)(1) (1985). The withdrawal liability payments are to be calculated by the fund on a unilateral basis, and assessed to the withdrawing employer according to a schedule set up by the fund, with payments to begin within sixty days after the fund demands payment. 29 U.S.C. § 1399(b)(1) (1985).

If, however, the pension fund and the withdrawing employer do not agree on the amount of the employer's obligation, they must arbitrate their dispute. 29 U.S.C. § 1401(a)(1) (1985). While the arbitration of the dispute proceeds, the employer must make periodic interim payments in amounts determined by the pension

_____

*Health Benefit Fund v. John W. Ryan Constr. Co.,* 767 F.2d 1170, 1176 (5th Cir.1985) (extending the MPPAA's award of attorney's fees to the appellate process).

[5]After the district court rendered its judgment in this case, the arbitrator determined that NPF's recalculated amount of withdrawal liability was correct. MAR-LEN is in the process of challenging in a separate lawsuit the arbitrator's final order that held that MAR-LEN was in fact liable for withdrawal payments to NPF. *See supra* note 2.

4

fund.  29 U.S.C. §§ 1399(c)(2)[6] & 1401(d)[7] (1985).  If the employer refuses to make interim payments, a plan fiduciary, such as a trustee, may file a civil action in federal court to collect.  29 U.S.C. § 1451(a)(1) (1985).  In essence, Congress through the MPPAA has devised a "pay now, dispute later" scheme, making the pension fund the stakeholder.  *Robbins v. McNicholas Transport Co.,* 819 F.2d 682, 685 (7th Cir.1987);  *see also Debreceni v. Merchants Terminal Corp.,* 889 F.2d 1, 5-6 (1st Cir.1989) (holding that the employer must make interim payments while awaiting the outcome of arbitration);  *Marvin Hayes Lines, Inc. v. Southeast & Southwest Areas Pension Fund,* 814 F.2d 297, 299 (6th Cir.1987) (same);

---

[6]Section 1399(c)(2) states

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2) (1985).

[7]Section 1401(d) states that

> Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.  If the employer fails to make timely payment in accordance with such final decision, the employer shall be treated as being delinquent in the making of a contribution required under the plan (within the meaning of section 1145 of this title.)

29 U.S.C. § 1401(d) (1985).

5

*United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.,* 787 F.2d 128, 132-34 (3d Cir.1986), *aff'd by equally divided court,* 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987) (same); *Trustees of Amalgamated Ins. Fund v. Geltman Industries, Inc.,* 784 F.2d 926, 932 (9th Cir.), *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986) (same).

### III

In this case, MAR-LEN argues that the district court employed the incorrect standard when determining whether MAR-LEN was required to make interim payments to NPF. Specifically, MAR-LEN contends that the district court ignored the detrimental economic impact on the company of NPF's demand for interim payments before liability had been fully adjudicated. MAR-LEN also argues that the district court erred in this case by failing to evaluate, independently of the arbitrator's ruling, the merits of the underlying liability before ordering the interim payments.[8]

---

[8]MAR-LEN presents two additional arguments that we should address briefly. First, MAR-LEN contends that the withdrawal liability payment scheme is constitutionally infirm. The Supreme Court, however, has unequivocally held that the withdrawal liability scheme of the MPPAA is constitutionally sound. *Concrete Pipe & Prods., Inc. v. Construction Laborers Pension Trust Fund,* --- U.S. ----, ----, 113 S.Ct. 2264, 2289, 124 L.Ed.2d 539 (1993) ("The imposition of withdrawal liability here is rationally related to the terms of Concrete Pipe's participation in the plan it joined and that suffices for substantive due process scrutiny of this economic legislation."). Next, MAR-LEN presented lengthy arguments concerning the arbitrator's computation of withdrawal liability. As discussed in note 2 *supra,* the arbitrator's computation of withdrawal liability is the subject of a separate proceeding. As such, we will not address the computation of liability here. *See also Trustees of Chicago Truck Drivers, Helpers & Warehouse Workers*

A

The Fifth Circuit has never determined precisely what standard a district court should employ when determining whether a withdrawing employer should be compelled to make interim withdrawal payments. We have previously held that a district court has a "measure of discretion" when determining whether a withdrawing employer must make interim withdrawal liability payments. *See Central States Southeast & Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc.,* 826 F.2d 320, 330 (5th Cir.1987) (hereafter "*T.I.M.E.-DC.*" ). Although we have never considered the precise extent of that "measure of discretion," other circuits, most notably the Seventh Circuit, have had the opportunity. The Seventh Circuit, in *Robbins v. McNicholas Transport Co.,* 819 F.2d 682 (7th Cir.1987), adopted a standard advocated at that time by the Pension Benefit Guaranty Board.[9] Under the *McNicholas* standard, "where the trustees bring an action to compel payment, pending arbitration, the court should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business." *Id.*

_____

*Union Pension Fund v. Central Transport, Inc.,* 935 F.2d 114, 118 (7th Cir.1991). Any errors committed by the arbitrator in reaching its decision are subject to review during the direct appeal of that case, which is currently pending in another court. *See also* note 5 *supra.*

[9]The Pension Benefit Guaranty Board is a government owned corporation created to guarantee payments to plan participants. As the Supreme Court has directed, the Courts of Appeals must consider the views of the Pension Benefit Guaranty Board when deciding ERISA issues. *Mead Corp. v. Tilley,* 490 U.S. 714, 726–28, 109 S.Ct. 2156, 2164, 104 L.Ed.2d 796 (1989).

at 685. In dicta, we discussed the *McNicholas* standard in *T.I.M.E.-DC;* however, because the issue concerning the extent of a district court's discretion was not before us, we did not adopt the *McNicholas* standard. *T.I.M.E.-DC* 826 F.2d at 330.

In the years after the opinions in *McNicholas* and *T.I.M.E.-DC* were issued, the Seventh Circuit has issued other opinions clarifying the *McNicholas* standard. With the support of the Pension Benefit Guaranty Board,[10] the Seventh Circuit held that a district court's discretion to consider equitable factors such as the employer's probability of success on the merits and the economic impact of interim payments is "not an invitation to pre-try the case or to excuse payments by those employers whose precarious financial condition creates the greatest risk to the pension plan." *Trustees of Chicago Truck Drivers Union Pension Fund v. Central Transport, Inc.,* 935 F.2d at 119. The court further reasoned that the *McNicholas* standard is

> at most a recognition that if the fund's claim is frivolous—if the arbitrator is almost certain to rule for the employer—then the plan is engaged in a ploy that a court may defeat. When an employer is thinly capitalized and could be propelled into bankruptcy by interim payments, an unscrupulous pension plan could squeeze something from the firm without much chance of success before the arbitrator. Having assured itself that the plan's claim is legitimate, however, the court should order the making of interim payments and leave the rest to the arbitrator.

*Id.* Thus, in effect, a reviewing court merely determines whether

---

[10]Since 1989, the Pension Benefit Guaranty Board's position has been that enforcement of interim payments is a routine, relatively mechanical statutory obligation for the courts, and not the occasion for an extended factual inquiry. *Debreceni v. Merchants Terminal Corp.,* 889 F.2d at 6-7.

the pension plan's claim is nonfrivolous and colorable[11]. If the claim for withdrawal liability is colorable, the employer must make interim payments while it contests the underlying liability. If, on the other hand, the claim is frivolous or not colorable, the district court has the narrow measure of discretion to excuse the employer from making interim withdrawal liability payments.

This limited measure of discretion protects employers from frivolous claims, while at the same time giving effect to congressional intent that the pension fund be the stakeholder during disputes over withdrawal liability. As other circuits have noted, withdrawing employers are often financially troubled companies. Deferring interim withdrawal liability payments may ultimately leave a pension fund with an obligation to the workers without a corresponding source of funds. The "pay now, dispute later" aspect of the MPPAA was designed to reduce the risk of nonpayment by a withdrawing employer. *See, e.g., Trustees of Chicago Truck Drivers v. Central Transport, Inc.,* 935 F.2d at 118. Contributing employers, on the other hand, have relatively little risk of losing the interim payments. Pension funds are highly regulated institutions, and only in the most uncommon of cases will a fund be unable to repay interim withdrawal liability payments if so required.[12] Therefore, like the other circuits that have

---

[11]A claim is colorable if it is more likely than not to have some merit.

[12]It should be noted, however, that, in some instances, a withdrawing employer may be at risk of losing the interim payments if the pension fund itself is financially unstable. If such an employer is required to make interim withdrawal liability

9

considered this issue, we hold that a court has the ability to consider whether the pension fund's claim against a withdrawing employer is frivolous. If the pension fund's claim is frivolous or not colorable, then the district court has a narrow measure of discretion to excuse payments of interim withdrawal liability.

B

In this case, the district court properly applied the limited *McNicholas* standard when it concluded that NPF's claim was colorable. The district court also correctly declined to evaluate independently the merits of the underlying dispute concerning withdrawal liability. Thus, the district court properly determined that NPF's claim was colorable without encroaching on territory that properly was controlled by the arbitrator.

IV

For the foregoing reasons, the judgment of the district court requiring MAR-LEN to make interim withdrawal liability payments is

AFFIRMED.

---

payments, *i.e.,* the pension fund's claim is colorable, the district court should take steps to insure that the employer will be able to recover the interim payments in the event that the arbitrator rules in favor of the employer. One possible measure would be the establishment of an escrow account in which the interim payments may be safely held until resolution of the dispute. *See T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds,* 756 F.2d 939, 947 (2d Cir.1985); *Bowers v. Compania Peruana De Vapores, S.A.,* 689 F.Supp. 215, 220 (S.D.N.Y.1988).