UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 95-1032

GIROUX BROS. TRANSPORTATION, INC.,

Plaintiff, Appellant,

v.

NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge] 



Before

Boudin, Circuit Judge, 

Aldrich and Coffin, Senior Circuit Judges. 



John D. O'Reilly, III with whom O'Reilly & Grosso was on brief 
for appellant.
Christopher N. Souris with whom Feinberg, Charnas & Birmingham 
was on brief for appellee.



January 4, 1996


ALDRICH, Senior Circuit Judge. Giroux Bros. 

Transportation, Inc. (Giroux) appeals from the grant of

summary judgment in favor of New England Teamsters & Trucking

Industry Pension Fund (the Fund), the plan sponsor of a

multi-employer employee benefit plan in which Giroux

participated. Giroux sought a declaration of non-liability

for the Fund's assessment of withdrawal liability under the

Employee Retirement Income Security Act (ERISA), as amended

by the Multiemployer Pension Plan Amendments Act of 1980

(MPPAA), 29 U.S.C. 1381 et seq, claiming the Fund's demand 

was barred by the statute of limitations, and that hardship

should excuse it from the obligation to make interim payments

of the Fund's demand pending resolution of this dispute. The

Fund counterclaimed to the contrary. The court concluded

that the Fund's demand was not barred, that Giroux failed to

allege facts sufficient to show irreparable harm in order to

avoid its obligation to make interim payments, and that

resolution of its withdrawal liability dispute is committed

in the first instance to arbitration. We affirm.

The parties agreeing to the material facts, we take

a moment to trace the genesis and procedural history of the

controversy. Giroux had been making pension contributions to

the Fund on behalf of its employees for a number of years

pursuant to a standard, industry-wide collective bargaining

agreement to which it periodically renewed its allegiance by

-2-

executing "supplements" with a Teamsters local. It decided

to stop with the last executed agreement upon its expiration

in 1981 or 1982, but neglected to notify the local, or the

Fund. In light of a common industry tolerance for delay in

executing renewals,1 failure to execute a new agreement would

not necessarily give rise to an inference that an employer no

longer intended to be bound, and Giroux continued, without

interruption, to make employee contributions to the Fund's

pension plan until early 1994. When these payments ceased,

the Fund responded by sending Giroux a standard delinquency

notice, to which Giroux responded that it had "not had a

collective bargaining agreement with the Teamsters for some

15-20 years," and thus had no obligation to continue

contributions. The Fund then verified that Giroux had never

executed any successors to the agreement that expired in 1981

or 1982, and conceded Giroux thus had no contractual

obligation to contribute after that point. The parties agree

that Giroux therefore "withdrew" from the Fund within the

meaning of the MPPAA, 1383(a)(1), upon expiration of its

last collective bargaining agreement, sometime in 1981 or

1982. The Fund therefore assessed and demanded payment of

withdrawal liability from Giroux as of September 30, 1981, as

 

1. The district court noted that gaps of several years
between expiration and renewal are not uncommon among the
thousands of employers that adhere to the collective
bargaining agreement through executing supplements with
Teamsters locals.

-3-

provided. 29 U.S.C 1381 et seq. 

In October, 1994, Giroux initiated arbitration

according to the MPPAA's mandatory arbitration provision, id. 

at 1401, claiming the Fund's demand for withdrawal

liability payment some 12 years after its effective

withdrawal was untimely, and, even if timely, it was entitled

to credit for post-withdrawal contributions. Giroux

simultaneously instigated this action in the District of

Massachusetts for declaratory judgment that the Fund's demand

was statutorily barred by the six year limitation contained

in 1451(f), and for injunctive relief from its obligation

under 1399(c)(2) to make interim payments of the Fund's

withdrawal liability assessment pending resolution of its

claims. The Fund counterclaimed to the contrary. It

stressed that the timeliness of its demand was governed

exclusively by 1399(b), which in turn is statutorily

committed to resolution through arbitration, 29 U.S.C. 

1401(a)(1), and sought declaratory relief.

In December, 1994, the district court ruled that

the Fund's demand was not barred by 1451(f), that Giroux's

allegations of financial hardship did not amount to

"irreparable harm" sufficient to exempt it from statutory

obligation to make interim payments, and that any remaining

dispute with respect to the Fund's demand had to be resolved

through arbitration. Giroux's appeal was argued in

-4-

September, 1995.

In October, 1995, the arbitrator ruled, inter alia, 

that Giroux was estopped from contending that the Fund's

demand was untimely by its own "equivocal" and "deceitful"

actions, and that the Fund's demand was made "as soon as

practicable" under 1399(b)(1) in any event; it declined to

rule on Giroux's offset claim. Both parties briefed this

court on the implications of the arbitration award for this

appeal.

I. Withdrawal Liability 

The MPPAA was enacted in response to a crisis

facing multi-employer pension plans from which employers had

withdrawn in increasing numbers, leaving the plans without

adequate funds to pay vested employee benefits. See Pension 

Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 722- 

25 (1984). The act makes an employer withdrawing from such a

plan liable for its proportionate share of the plan's

unfunded vested benefits. Id. at 725; 29 U.S.C. 1381, 

1391. Withdrawal generally occurs when an employer

permanently ceases to have an obligation to contribute under

the plan, or ceases all covered operations. Id. at 

1383(a). The plan sponsor must assess, schedule and demand

withdrawal liability payment "[a]s soon as practicable after

an employer's complete or partial withdrawal," id. at 

1399(b)(1), and an employer must pay according to the

-5-

Fund's schedule notwithstanding any pending dispute. Id. at 

1399(c)(2).

-6-

II. Statute of Limitations 

Giroux seeks to avoid the Fund's demand for

withdrawal liability payment by invoking the limitations

provision of the MPPAA, which states, in relevant part, that

a plan fiduciary

who is adversely affected by the act or
omission of any party under this subtitle
with respect to a multiemployer
plan, . . . may bring an action for
appropriate legal or equitable relief, or
both,

29 U.S.C. 1451(a)(1), but no later than

(1) 6 years after the date on which the
cause of action arose, or

(2) 3 years after the earliest date on
which the plaintiff acquired or should
have acquired actual knowledge of the
existence of such cause of action; except
that in the case of fraud or concealment,
such action may be brought not later than
6 years after the date of discovery of
the existence of such cause of action.

Id. at 1451(f). Giroux claims that because the Fund did 

not demand withdrawal liability payment until some 12 years

after Giroux's withdrawal from the Fund's pension plan, its

demand is barred by this provision.

The Fund contends on appeal that its demand in this

case is not governed by 1451(f) because this provision is a

limitation only on litigation, and since it did not instigate 

this lawsuit but merely demanded payment according to its

statutory rights, it has not commenced an "action" within the

meaning of 1451. Thus, according to the Fund, the statute

-7-

of limitations cannot have begun to run with respect to any

action it could bring to enforce these rights. 

We cannot agree that an action for declaration of

non-liability asserting a statute of limitations defense

renders the statute inapplicable simply by virtue of the fact

that the party claiming liability did not commence the

action, especially where (but not because) that party

counterclaimed for declaration and enforcement of its rights.

However, the principal question raised by Giroux's action,

whether the Fund timely made its demand, is explicitly

governed by 1399, which provides:

As soon as practicable after an
employer's complete or partial
withdrawal, the plan sponsor shall--

(A) notify the employer of--

(i) the amount of the liability, and

(ii) the schedule for liability payments,
and

(B) demand payment in accordance with the
schedule.

29 U.S.C. 1399(b)(1). The MPPAA further provides that if

the Fund's demand for withdrawal liability payment was made

"as soon as practicable," then it is due and owing,

notwithstanding a pending dispute, id. at 1399(c)(1)(A)(i) 

and (2), and the Fund can bring an action to compel

"immediate payment" of any outstanding amounts, id. at 

1399(c)(5) and 1451(a), subject to the statutory time

-8-

limitation. Id. at 1451(f). We find this statutory 

framework governing a plan sponsor's demand for withdrawal

liability payment sufficiently clear so that to the extent

the general 6 year limitation on actions conflicts, Congress

did not intend it to override. We therefore hold that

questions concerning the timeliness of a plan sponsor's

demand are governed exclusively by 1399(b)(1). Thus

resolution of Giroux's claim turns solely on whether the

Fund's demand was made "as soon as practicable" after

Giroux's withdrawal.2

However, any dispute regarding the timeliness of

the Fund's demand under 1399(b)(1) is statutorily committed

to arbitration in the first instance. 29 U.S.C.

1401(a)(1).3 This is no less so because it may also

involve a measure of statutory interpretation. Vaughn v. 

Sexton, 975 F.2d 498, 502 (8th Cir. 1992), cert. denied,  

U.S. , 113 S. Ct. 1268, 122 L.Ed.2d 664 (1993) (citing

cases of 2d, 3d, 4th, 6th and D.C. circuits); Teamsters 

 

2. We express no views on the significance of section
1451(f) to a determination of whether the Fund's demand was
made "as soon as practicable" within the meaning of 
1399(b)(1), as this question is not before us. See post. 

3. Any dispute between an employer and the 
sponsor of a multiemployer plan
concerning a determination made under
sections 1381 through 1399 of this title
shall be resolved through arbitration. 

29 U.S.C. 1401(a)(1) (emphasis added). 

-9-

Pension Trust Fund v. Allyn Transp. Corp., 832 F.2d 502, 504 

(9th Cir. 1987); Trustees of Colorado Pipe Ind. Pension Trust 

v. Howard Electrical & Mech., Inc., 909 F.2d 1379, 1386 (10th 

Cir. 1990), cert. denied, 498 U.S. 1085 (1991). 

Although the arbitration provision is an exhaustion

of administrative remedies requirement, rather than a

jurisdictional bar, see, e.g., Colorado Pipe, 909 F.2d at 

1385 (citing cases), there can be no question that it was

aptly applied here, when arbitration was already underway.

III. Relationship of this Appeal  

to Parallel Arbitration Proceedings 

It now seems to be Giroux's position that the

arbitrator's determination that the Fund's demand was timely

under 1399(b)(1) is before this court for review, or, that

this issue, never raised before the district court, is open

for our consideration. Although it might conserve resources

in this instance to concur, we disagree. Rather, Giroux's

only recourse is to pursue judicial review of the arbitration

award:

Upon completion of the arbitration
proceedings in favor of one of the
parties,any party thereto may bring an
action, no later than 30 days after the
issuance of an arbitrator's award, in an
appropriate United States district court
in accordance with section 1451 of this
title to enforce, vacate, or modify the
arbitrator's award.

29 U.S.C. 1401(b)(2). This simultaneously pending action,

-10-

brought separately to assert a claim under a non-arbitrable

provision of the MPPAA, does not qualify as a proper appeal

of the arbitrator's ruling. We see no reason to undertake

review of the arbitrator's analysis when it is beyond serious

dispute that issues arising under 1399 cannot normally be

litigated in federal court independent of arbitration, and

the process for appealing an arbitration award is clear.

We are well aware that enforcing the statutorily

mandated procedure in this case could land it again before us

in substantially the same posture after additional expense on

both sides, and that the legislative aim in enacting the

MPPAA included lessening the costs and delay of withdrawal

liability dispute resolution. See, e.g., I.A.M. Nat. Pension 

Fund v. Clinton Engines Corp., 825 F.2d 415 at 426 and n. 20 

(D.C. Cir. 1987) (citing legislative history). Yet, to hold

otherwise would create a loophole for employers to bypass the

statutory scheme by disguising arbitrable disputes for

presentation directly in federal court, as Giroux did here,

then invoking legislative purpose in order to get prompt

appellate consideration. Because this is not a proper appeal

of the arbitrator's award, and we decline to independently

reach Giroux's arbitrable claims, we do not review whether

the Fund's demand was made "as soon as practicable," or any

other arbitrable issues.

IV. Interim Payment of the Fund's Demand 

-11-

The district court held that Giroux's claims of

hardship were insufficient to avoid meeting its statutory

obligation to make interim payments of the Fund's demand

pending ultimate resolution of its withdrawal liability

dispute. 29 U.S.C. 1399(c)(2).4 See Debreceni v. 

Merchants Terminal Corp., 889 F.2d 1, 4 (1st Cir. 1989); 

Trustees of the Plumbers and Pipefitters National Pension 

Fund v. Mar-Len, Inc., 30 F.3d 621, 624 (5th Cir. 1994). 

Giroux contended that the Fund's claim would most certainly

be found barred by 1451(f), and that meeting these payments

would require a partial liquidation of its assets and

employee layoffs, hence the court therefore abused its

discretion in failing to suspend payment. We have already

disposed of Giroux's first contention; we turn to the second.

The MPPAA indisputably creates a "pay now, dispute

later" mechanism, deeming the protection of multi-employer

pension plans and their beneficiaries paramount. See id. at 

624 (citing cases); Debreceni, 889 F.2d at 5. This scheme 

 

4. This section states, in relevant part:

Withdrawal liability shall be payable in 
accordance with the schedule set forth by
the plan sponsor under subsection (b)(1)
of this section beginning no later than 
60 days after the date of the demand
notwithstanding any request for review or 
appeal of determinations of the amount of
such liability or of the schedule.

29 U.S.C. 1399(c)(2) (emphasis added).

-12-

puts payment ahead of decision even though the employer might

prevail in the end.5 Trustees of Chicago Truck Drivers 

Pension Fund v. Central Transp., Inc., 935 F.2d 114, 118 (7th 

Cir. 1991). Although we have therefore held that "assessed

interim liability payment must be paid . . . notwithstanding

a pending arbitrable dispute," Debreceni, 889 F.2d at 4, we 

have never squarely decided whether an equitable exception

exists.6 Id. at 7. However, in light of the clear 

congressional intent to protect multi-employer pension plans

in withdrawal liability disputes, we have indicated that

should an equitable exception exist it would "require no less

than the threat of imminent insolvency." Id. at 7 and n. 6. 

Giroux's allegations, even if accepted, do not suggest such

harm.

Affirmed. 

 

5. The MPPAA requires "actual payment shall commence in
accordance with [the schedule set forth by the plan
sponsor]," 29 U.S.C. 1399(c)(1)(A)(i) and (2), note 4,
supra; Debreceni, 889 F.2d at 6; the plan has a right to 
"immediate payment" of any outstanding amount, plus interest,
"from the due date of the first payment which was not timely
made," 29 U.S.C. 1399(c)(5); a plan may enforce this right,
id. at 1451(a)(1); employers are entitled to recovery of 
any overpayment, with interest, 29 C.F.R. 2644.2(d).

6. Other circuits have held an employer may avoid interim
payment only if the pension plan's claim is frivolous or not
colorable. Mar-Len, 30 F.3d at 626; Trustees of Chicago 
Truck Drivers v. Central Transport, Inc., 935 F.2d 114, 119 
(7th Cir. 1991).

-13-