BECKER, Circuit Judge,
dissenting.
The majority’s decision is driven by its conclusion that when the Congress provided that withdrawal liability “shall be payable ... no later than 60 days after the date of the demand notwithstanding any request for review,” 29 U.S.C. § 1399(c)(2) (emphasis added), Congress provided for a mandatory injunction. Under this approach, a district court must impose such an injunction even if: (1) the trustees’ demand for payment is frivolous (in terms of either liability or amount demanded); and (2) the payment would bankrupt or financially cripple the withdrawing employer and eliminate the possibility of future payments. I disagree.
I.
First, I doubt that Congress’s words here are susceptible to that construction. It uses the phrase “shall be payable,” which seems much more open-ended than “shall be paid.” Thus, the statute is at least ambiguous. Looking to Congressional intent, I do not believe that Congress here intended a result so inflexible and therefore so problematic.
Like the majority, I read Congress to be concerned that an employer could stymie a pension fund’s collection attempts by pursuing litigation over withdrawal liability. However, by disallowing consideration of the employer’s inability to pay in the face of a frivolous withdrawal liability claim, the majority actually undermines Congress’s goals. If an employer becomes financially insolvent as a result of its withdrawal payment obligations, the pension fund will not only be unable to receive “an uninterrupted flow of payments,” but also will be the but for cause of its own inability to secure “ultimate recovery.” Furthermore, the proposal that I will advance — giving courts the discretion to deny a preliminary injunction only when the pension’s claim is not colorable and when requiring interim payments would push a financially distressed employer over the cliffs — preserves Congress’s “pay now, dispute later” scheme.
II.
There is an even more fundamental problem with the majority’s analysis, one which does not depend on finding an ambiguity in the Congressional language. The majority uncritically assumes that the Congressional locution “shall be payable” translates into a proscription against a federal court’s using its historic equity powers to withhold or condition relief. It is incorrect.
A.
As I see it, the seminal cases in this area are Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944), and Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). These cases arose under the World War II Emergency Price Control Act and Regulations, and in *143 volved actions by the Price Administrator to enforce compliance therewith. Section 205(a) of the Act provided that
[w]henever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, * * * he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provisions, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a ■permanent or temporary injunction, restraining order, or other order shall he granted without bond.
Emergency Price Control Act of 1942, 50 U-S.CApp. Supp. II §§ 901 et seq., 925. (emphasis added).
The question presented in Hecht was whether the Administrator, having established that a defendant has engaged in acts or practices violative of § 4 of the Act, is entitled as of right to an injunction restraining the defendant from engaging in such acts or practices, or whether the court has some discretion to grant or withhold such relief. Although the Court determined that the mandatory character of § 205(a) is clear from its language, history and purpose (in our case the language is less clear), it held that the phrase “shall be granted” does not require issuance of an injunction against violation of a price regulation merely because the Administrator asks for it. Instead, the district court may, in accordance with equity practice, exercise discretion in determining what order shall be made. Hecht, 321 U.S. at 328-29, 64 S.Ct. at 591-92. The court explained that
[a] grant of jurisdiction to issue compliance orders hardly suggests an absolute duty to do so under any and all circumstances. We cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made.
Id. at 329, 64 S.Ct. at 591.
In Porter, the Court dealt with the power of a federal court, in an enforcement proceeding under § 205(a), to order restitution of rents collected by a landlord in excess of the permissible máximums. In rejecting the position of the Price Administrator that there was no jurisdiction under the statute to give the equitable remedy of restitution, the Court, following Hecht, held that
the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court’s jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. ‘The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.’ Brown v. Swann, 10 Pet. 497, 503, 9 L.Ed. 508. See also Hecht Co. v. Bowles, supra.
Porter, 328 U.S. at 898, 66 S.Ct. at 1089.
Another helpful case is Weinberger v. Romero-Barcelo, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). In Weinberger, the Court faced the question whether the mandatory language of the Federal Water Pollution Control Act requires a district court to enjoin immediately all discharges of pollutants that do not comply with the Act’s permit requirements, or whether the district court retains discretion to order other relief to achieve compliance. Reviewing the structure of the statutory scheme and the legislative history, the Court held that the statute contemplated the exercise of discretion. Importantly, however, the Court also relied on Hecht Co. v. Bowles, supra, pointing out that, while Congress may intervene and guide or control the exercise of the courts’ historic equity discretion, which reflects a “practice with a background of several hundred years of history,” Hecht, 321 U.S. at 329, 64 S.Ct. at 591-92, we “should not lightly assume that Congress has intended to depart from established principles.” Weinberger, 456 U.S. at 313, 102 S.Ct. at 1803 (emphasis added). Nor should we.
B.
Nothing cited to us suggests that Congress has been so direct and explicit in the MPPAA that we can conclude, much less “lightly assume,” that all equitable discretion has been removed. I, therefore, would follow the lead *144 of the Fifth Circuit in Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Mar-Len, Inc., 30 F.3d 621, 626 (5th Cir.1994), and the Seventh Circuit in Robbins v. McNicholas Transportation Co., 819 F.2d 682, 685-86 (7th Cir.1987). As the majority acknowledges, these courts have adopted an “equitable exception” to the MPPAA’s “pay now, dispute later” scheme. The equitable exception was first articulated by the Seventh Circuit, which observed in McNicholas:
where the trustees bring an action to compel payments, pending arbitration, the court should consider the probability of the employer’s success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business.
McNicholas Transportation Co., 819 F.2d at 685. The McNicholas standard has evolved into a test whereby “a reviewing court merely determines whether the pension plan’s claim [for withdrawal liability] is nonfrivolous and colorable.” If the claim is colorable, then the employer “must make interim payments while it contests the underlying liability.” Mar-Len, 30 F.3d at 626. If the claim is frivolous or not colorable, the district court has a narrow measure of discretion to excuse interim payments which to do otherwise would cause irreparable economic injury to the employer. Id.; Trustees of Chicago Truck Drivers Union Pension Fund v. Central Transport, Inc. 935 F.2d 114, 119 (7th Cir.1991).
In suggesting that we follow the Fifth and Seventh Circuit test, I underscore that the “equitable exception” would take hold only in the rare case. The district court can exercise discretion solely to ensure that the courts are not used by an unscrupulous pension fund lacking a legitimate withdrawal liability claim to squeeze money from an employer and propel it into bankruptcy. See Central Transport, 935 F.2d at 119. It also bears emphasizing that federal judicial involvement need not be extensive nor burdensome — federal judges are comfortable with making threshold eolorability assessments, which is what I would require as to the viability of the withdrawal liability claim. The same is true for the' inquiry as to whether the withdrawal liability will be so burdensome as to permanently cripple the employer (and deprive the Fund of future payouts). I also stress that, contrary to the majority’s intimation, our decision in Board of Trustees of Trucking Employees Pension Fund v. Centra, 983 F.2d 495 (3rd Cir.1992), did not decide the question before us here. Indeed, after noting the Seventh Circuit position, the Centra panel was careful to explain that the equitable exception could not possibly apply in the case before it because the withdrawing employer was “well heeled.”
C.
It is not clear from the present record whether the Trustees’ withdrawal liability claim here is in fact colorable or whether the financial impact of withdrawal liability payouts on Beaverbrook will in fact be devastating. I note that Beaverbrook has represented that it will experience serious financial difficulty if required to make interim withdrawal payments prior to the resolution of its challenge to the assessment of liability. And while it did not make a formal proffer on the point, Beaverbrook’s litigation position suggests its belief that the withdrawal liability claim is wholly without merit. I would remand for consideration of such matters under the Seventh Circuit test, which I read to be conjunctive: if the district court finds that the claim for withdrawal liability is not color-able, and if payment of withdrawal liability would push Beaverbrook over the cliff, as it were, it can utilize its equitable discretion to fashion a decree that might relieve Beaver-brook of the obligation to make interim payments (or some portion thereof).
A good argument can be made that this test should be made in the disjunctive, so as to protect every employer from frivolous claims and from bankruptcy. But I would be reluctant to extend our equitable discretion in the absence of more persuasive authority and a more compelling factual scenario.
For the foregoing reasons, I respectfully dissent.